(21 App. Div. 480.)

### PEOPLE ex rel. BIJUR v. BARKER et al.

(Supreme Court, Appellate Division, First Department. October 22, 1897.)

1. TAXATION—DEDUCTIONS—LIABILITIES FOR NONTAXABLE PROPERTY.
    Under Laws 1892, c. 202, § 1, prohibiting a deduction from a taxation assessment for any "debt * * * incurred in the purchase of nontaxable property," no deduction should be made for a sum borrowed for the purchase and replenishing of a stock of nontaxable tobacco, where such sum does not exceed the value of stock on hand.

2. SAME—CONSTITUTIONAL LAW—TAX ON IMPORTS.
    Laws 1892, c. 202, § 1, prohibiting a deduction from a taxation assessment for any "debt * * * incurred in the purchase of nontaxable property," is not a violation of Const. U. S. art. 1, § 10, subd. 2, prohibiting a state from laying duties on imports as authorizing a refusal to deduct from an assessment for taxes money borrowed to buy imported tobacco.

3. SAME—STATUTES—CONSTRUCTION.
    Under Laws 1892, c. 202, § 1, prohibiting a deduction from a taxation assessment for any "debt * * * incurred in the purchase of nontaxable property, * * * or on account of any indirect liability as * * * indorser or otherwise, nor for or on account of any debt * * * incurred for the purpose of evading taxation," no deduction can be allowed for debts incurred in the purchase of nontaxable property, though they were not contracted to evade taxation.

Appeal from special term, New York county.

Certiorari, on the relation of Moses Bijur against Edward P. Barker and others, as commissioners of taxes and assessments of New York City, to review an assessment for taxation of relator. From an

48 N.Y.S.—41

order of the supreme court, dismissing the writ, relator appeals. Affirmed.

The following is the opinion of BEEKMAN, J.:

I am not disposed to interfere with the conclusion of the·commissioners that the indebtedness of relator's firm is to be regarded, to the extent, at least, of the value of the tobacco on hand, as having been contracted or incurred in the purchase of the same. While the methods adopted by the partners in the transaction of their business may render it difficult, if not impossible, to show that a specific sum was borrowed for the purpose of paying for a particular lot of tobacco, still the fact remains that the borrowed money which it was sought to offset against taxable property was obtained and used for the purpose of paying for tobacco of which about the same amount of stock as that on hand had been carried by the firm for the two years preceding the assessment complained of. The loans obtained were sought and used for the purpose of supplying funds for the purchase of tobacco from time to time, and are to be regarded as debts contracted for the purchase of the tobacco in question, although at the time the money was borrowed it had not been bought, and no liability had been immediately incurred on its account. The borrowed money constituted a continuing fund for the purchase and replenishing of the stock of goods which the relator's firm carried from year to year. It was an indebtedness incurred originally, and continued for the purpose of enabling them to purchase and carry their stock of goods, and is, therefore, to be regarded as a debt or liability incurred in the purchase of the property on hand, within the meaning of the statute. It is too narrow a construction to hold that the statute refers only to the immediate debt to the vendor for the purchase money. It includes as well a debt incurred upon the borrowing of money from another with which to pay the vendor. If the view is to be adopted that the money so borrowed should be regarded only as an indebtedness incurred for the purchase of the tobacco first bought and paid for out of ·the proceeds of the loan, an easy method is at once discovered, by which the statute may be completely nullified. Upon the sale of such tobacco, the proceeds, instead of being used for the discharge of the loan, would be employed in the purchase of other goods, and the loan still continuing could be set off against taxable property on the ground that it was not specifically contracted for the purchase of the particular tobacco on hand, which is exempt from taxation as imported goods. The double exemption, so to speak, which the statute was passed to prevent, would thus be accomplished. The course of business thus suggested seems to have been that which was adopted by relator's firm, but without any intention of framing a scheme to evade taxation. The court will be slow to give to a statute a construction which would practically defeat its purpose.

Considering, then, the proportion of the indebtedness incurred by relator's firm which is equivalent to the book value of the tobacco on hand as not deductible from the taxable assets, within the meaning of the statute, it becomes necessary to, consider the constitutional question raised by the relator. The statutory provisions which are involved are embodied in section 1, c. 202, Laws 1892. It is there provided that, in determining the amount for which a person may be assessed for taxation on personal property the assessor shall estimate "the full value of all the taxable personal property owned by such person after deducting the just debts owing by him, but no deduction shall be made or allowed for or on account of any debt or liability contracted or incurred in the purchase of non-taxable property or securities owned by him or held for his benefit, nor for or on account of any indirect liability as surety, guarantor, indorser or otherwise; nor for or on account of any debt or liability contracted or incurred for the purpose of evading taxation." It is conceded, as it must be, that the tobacco owned by relator's firm was nontaxable property. It was imported by them, and held for sale in the original packages. To attempt to tax it would be in violation of the constitution of the United States (article 1, § 10, subd. 2), which prohibits a state from laying any imposts or duties on imports without the consent of congress. The commissioners, as their return shows, have not attempted to do this, but have eliminated it from their estimate. of taxable property on the ground of its

exemption. They have, however, refused to allow a deduction of the indebtedness of the firm from the taxable assets, on the ground that it was incurred in the purchase of the exempt article. It is claimed that this is indirectly taxing the article itself, thus defeating the exemption. I do not so regard it. If the statute was, in terms or in effect, confined to cases of imports, there might be some force in the contention that it was intended and operated to nullify the constitutional provision above referred to; but this is by no means the case. It applies to all kinds of nontaxable property, and was intended to prevent what may be appropriately styled a double exemption growing out of a privilege, conceded by the state to its taxable inhabitants, of deducting their just debts from their taxable property in arriving at a net assessment for the purpose of taxation. This privilege in no way affects the taxability or nontaxibility of the property. It is the amount of the assessment alone which is affected by the deductible debts, and the net result is a surrender by the state of its right to tax an equivalent of taxable property. The state surely has the right to repeal the concession which it has made, and to require assessments for personal taxation to be based on the value of taxable property, without regard to the debts of the taxpayer. It has, therefore, the power to classify the indebtedness, and to say that one class shall be deductible and another class shall not. In excluding from the privilege debts incurred in the purchase of nontaxable property, the state does not assume to tax that property, but takes from the taxpayer the right of deducting such debts from other property which is taxable. The extent and nature of these deductions it is within its undoubted province to determine. Conceding, as we must, that it can sweep out of existence all right or claim to any deduction on account of debts, with what show of reason can it be maintained that its power is limited to the alternative of all or none? The proposition is illogical and absurd. The exempt property is not taxed, either directly or indirectly, by the refusal of the state to allow a debt incurred in its purchase to be offset against the value of property which is subject to taxation. If we were dealing with a statute the purpose of which was to accomplish by trick or device a forbidden object, the case would require a different treatment; but there is no pretense, nor could there be any, that such is the case here. The law was not leveled at imports, but prescribes a general class of indebtedness which includes as many kinds as there are different forms of property—which are numerous—that are exempt, under state and federal law, from taxation. It seems to me clear that the statute, in its application to the case at bar, is not open to the constitutional objection urged.

The further contention of the relator that the statute is confined to cases where the indebtedness was incurred in bad faith for the purpose of evading taxation is hardly tenable. It separately enumerates, in a disjunctive form of statement, several classes of debts which may not be deducted. The last of these are debts "contracted or incurred for the purpose of evading taxation." It hardly requires any discussion to show that this does not qualify the preceding clauses, but is a separate and distinct classification, without any modifying influence or effect upon what precedes it. As it does not appear that the tax commissioners have committed any error in making the assessment complained of, the writ must be dismissed, with costs.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

F. R. Minrath, for appellant.
George S. Coleman, for respondents.

PER CURIAM. Order affirmed, with $10 costs and disbursements, on opinion of BEEKMAN, J.