[No. 1959]

# NEVADA CONSOLIDATED MINING AND MILLING COMPANY (A CORPORATION), APPELLANT, *v.* C. R. LEWIS, RESPONDENT.

1. FRAUDULENT CONVEYANCES — SUFFICIENCY OF EVIDENCE — GOOD FAITH.

    Evidence *held* to support a finding that a mortgage was executed in good faith, without intent on the part of either party to hinder, defraud or delay any creditor of the mortgagor.

2. JUDGMENT — EQUITABLE RELIEF — SUFFICIENCY OF EVIDENCE — FRAUD IN OBTAINING JUDGMENT.

    Evidence, in an action to set aside a default judgment foreclosing a mortgage given by plaintiff company to defendant, on the ground of fraud in obtaining the judgment, *held* sufficient to support a finding that the summons and complaint were duly and regularly served upon the company in the foreclosure suit; that the judgment was regularly and legally obtained; and that defendant had no good or meritorious defense thereto.

3. CORPORATIONS—MORTGAGES—VALIDITY—ESTOPPEL TO ATTACK.

    A corporation which has received the benefit of all the money advanced by its mortgagee is not in a position to question the good faith and validity of the transaction.

4. CORPORATIONS—INSOLVENCY—EVIDENCE.

    Evidence *held* insufficient to show that a company at the time of executing a mortgage was insolvent.

5. JUDGMENT — EQUITABLE RELIEF — GROUNDS — MERITORIOUS DEFENSE.

    A court of equity will not, as a general rule, set aside a judgment regularly obtained by default, in the absence of a showing of a good and meritorious defense to the original action.

6. JUDGMENT—EQUITABLE RELIEF—GROUNDS—FRAUD IN OBTAINING JUDGMENT.

    A court of equity may set aside a default judgment where fraud was practiced in the very matter of obtaining the judgment, although no meritorious defense to the original action was shown; since in such case the fraud is regarded as having been practiced on the court as well as on the injured party.

7. JUDGMENT—EQUITABLE RELIEF—GROUNDS—FRAUD.

    Where proper service was had, equity will not set aside a default judgment for fraud in obtaining it, in the absence of a showing of a meritorious defense.

8. JUDGMENT—VALIDITY—ILLEGALITY AS TO COUNSEL FEES.

    That counsel for a mortgagee, who was a director of the defendant mortgagor, took a judgment in favor of himself for counsel fees against the mortgagor, did not invalidate the foreclosure judgment, though the judgment for counsel fees was void.

9. MORTGAGES—FORECLOSURE—JUDGMENT—ACTION TO SET ASIDE—
IRREGULARITIES—DEFECT IN PLEADING.
  Plaintiff in an action to foreclose a mortgage failed to file
  any affidavit that all taxes on the money or debts secured had
  been paid, as required by Rev. Laws, 3756, which also pro-
  vided that on motion of defendant the court should stay
  proceedings until such affidavit was filed or proof of payment
  of such taxes made, and that the court, before entering judg-
  ment should require such affidavit or proof. *Held,* in the
  absence of a provision making a judgment void for failure to
  comply with the statute, that its purpose was only to aid in
  the enforcement of other tax laws, and that, as the objection
  went neither to a question of fraud upon the court nor the
  defendant mortgagor, it was not ground for setting aside a
  default judgment therein.

APPEAL from the District Court of the Second Judicial
District, Washoe County; *W. H. A. Pike,* Judge.

Action to set aside a default judgment foreclosing a
mortgage by the Nevada Consolidated Mining and Mill-
ing Company against C. R. Lewis.   Judgment for defend-
ant, and motion for new trial denied, and plaintiff appeals.
**Affirmed.**

The facts sufficiently appear in the opinion.

*Boyd & Salisbury,* for Appellant:

The question presented by this case and the question
which must be decided by this court in disposing of this
case is:   Can an attorney, who is at the time a director of
a corporation and thus occupying a fiduciary position as a
trustee for the corporation and its stockholders, com-
mence an action as attorney for the plaintiff against the
corporation, his own *cestui que* trust, serve the process on
his own stenographer, who happens to be the secretary
of the defendant corporation, without notifying any other
officer or stockholder of the corporation and without
allowing the corporation an opportunity of making a
defense, and then take a judgment by default against the
corporation of which he himself is a trustee and also take
judgment for an attorney's fee against his own *cestui que*
trust of over two thousand dollars, even though he knew
the corporation had local attorneys who might have been
notified of the commencement of the action, and who

might have been given an opportunity of doing the same? It will doubtless be argued by the respondent that it was the duty of the plaintiff in this case to absolutely prove such a state of facts in order to obtain a decree setting aside the default and allowing the defendant corporation to answer as would show the court absolutely that in the trial upon the merits that the plaintiff corporation would be able to show that the mortgage was invalid and fraudulent and not enforceable against the corporation. With this position we do not agree, and it is our understanding of the law that it is not the duty of the court in this action to pass upon the validity of the mortgage executed by the Nevada Consolidated Mining and Milling Company to C. R. Lewis on the 15th day of October, 1907, but that it is only the duty of the court to ascertain whether or not such fraud existed in the procurement of judgment of foreclosure as to warrant the court in granting the prayer of the complainant herein and in allowing the defendant in the foreclosure suit to make its defense against the mortgage. It is alleged in the complaint herein that the defendant in the foreclosure suit has a meritorious defense to that action which it was prevented from making by the surreptitious actions of Judge Mack and Mrs. A. M. Warren, in procuring the default of the corporation, and will undoubtedly be argued by counsel for respondent that, unless the court finds that the mortgage referred to was in fact invalid, it is the duty of the court in this action to allow the decree of foreclosure to stand, even though there was fraud in its procurement. We submit that it was the duty of the trial court to pass upon the question of the validity of the mortgage, but upon satisfactory proof having been given to the court that the judgment was procured through fraud and upon the defendant's claiming to have a meritorious defense and insisting upon its right to present such defense, that then, in this action, the court should vacate the judgment and allow the defendant in the foreclosure suit the right to present its defense.

It is laid down in volume 3 of Encyclopedia of Plead-
ing and Practice, at page 611, that in bills to impeach
decrees the fraud alleged is the point in issue and that
such fraud must be established by proof before the
propriety of the decree can be investigated, and that
where it is established the court will restore the parties
to their former situation whatever their rights may be,
and at page 629 of the same volume will be found a dis-
cussion of what such fraud must consist of in order to
entitle the petitioner to the relief sought.

Cook on Corporations, in vol. 2, sec. 656, lays down a
rule that a stockholder in a corporation that has exe-
cuted a fraudulent note has such an interest that he will
be permitted to intervene and defend a suit on the note
where he alleges that the note is fraudulent, and it is
well settled that contracts between corporations having
only the same directors in common are subject to being
declared invalid, and that a mortgage by an insolvent
corporation to a creditor corporation, the two corpora-
tions having a majority of their directors in common,
may be declared to be illegal.

The appellant submits that it is the duty of this court
in this action to find that there was fraud in the pro-
curement of the default and judgment on the part of
C. E. Mack and Mrs. A. M. Warren, but not necessarily
to find in addition to that fact that the defense claimed
by the plaintiff in this action to exist in its behalf must
absolutely prevail, because that is the very question
which will be litigated in the action upon the foreclosure
of the mortgage after the court has in this action ren-
dered its decree permitting the Nevada Consolidated
Mining and Milling Company to file its answer to the
foreclosure suit.   In this action it is only necessary for
the court to find that the plaintiff herein has some
defense which it desires to set up to the foreclosure of
the mortgage, and which is not frivolous.   Upon this
proposition we refer the court to volume 6 of Encyclope-
dia of Pleading and Practice, page 188, where it is laid
down that the examination by the court in an action of

this kind is only for the purpose of determining whether
or not the defense claimed to exist on behalf of the party
against whom the judgment has been taken, is frivolous,
and not to ascertain whether such defense will prevail
if established on new trial of the first action.

Whether or not this court may feel disposed to hold
that the defense alleged by the plaintiff to exist in its
behalf against the mortgage is a good defense or not,
this court must of necessity hold that the Nevada Con-
solidated Mining and Milling Company did have and
does have a defense against the mortgage which is not
frivolous and one which it should be permitted to set
up at least against a part of the cause of action con-
tained in the complaint brought for the foreclosure of
the mortgage, namely, as to the demand of the attorney's
fee of over $2,100 made by Judge Mack while acting as
attorney for plaintiff in the foreclosure suit and while
still a director in the corporation against which he
brings an action. It is our view that this court must
hold that the Nevada Consolidated Mining and Milling
Company is entitled to set up its defense to at least
$2,100 of the amount claimed by the plaintiff in the fore-
closure suit, and, when the court finds that the plaintiff
in this action has a defense to even a part of the demand
contained in the complaint in the foreclosure suit, it will
be the duty of this court to open the default and set
aside and enjoin the collection of the judgment until the
defendant in the foreclosure suit has had a chance to
file its answer and make its defense therein.

The essential element to be proved in a case of this
kind is the fraud in the procurement of the judgment
which is extrinsic to the judgment, and a calm consider-
ation of the reasons which lead to the rule must be suf-
ficient to convince the court that such must necessarily
be the rule. The purpose of relief, such as is sought
here, is to put the parties back in the position where
they were before one party was defrauded of his right
to make a defense. It is a primary principle that the

processes of courts are designed to allow a defendant to present his defense and to have his day in court, and when circumstances are called to the attention of the court which show conclusively that the defendant was deprived of his day in court, which is deprived him by the fraud of plaintiff, it naturally appears to the court that the processes of the court have been trifled with and that the very ends for which courts are organized have been subverted.

*Mack & Green,* for Respondent:

The burden of proof was upon the plaintiff to prove by clear, satisfactory and convincing evidence the existence of the alleged fraud.   (20 Cyc. 108.)

To establish the existence of a "meritorious defense" to the former action, it is incumbent upon plaintiff to successfully attack its own instrument in writing under seal of the corporation and executed by its regularly constituted officers, for otherwise there would be no meritorious defense.   The corporation could impeach its own instrument only by clear, positive and unequivocal evidence.   (17 Cyc. 775.)

It is stated in appellant's brief that "this court must bear in mind that this was not a suit to try the merits of the foreclosure of this mortgage, and not a suit brought to determine the validity of the mortgage itself." And it is insisted throughout the brief that the existence of the meritorious defense is not an essential prerequisite to a reversal of the judgment on this appeal.   Upon this point we entirely disagree with counsel for appellant.   Courts do not do idle things.   They are not constituted and established for the purpose of trying merely moot cases.   As we will hereafter show, the authorities all agree that the judgment cannot be disturbed in a case such as this, unless the existence of a meritorious defense is both pleaded and proven.   The corporation could not be defrauded unless it suffered some injury or had some right or thing of which it was deprived.   The

admission that it has no meritorious defense is an admission that no fraud was committed, no matter what irregularities inhered in the proceedings.

After a very diligent search we have been unable to find a single case which is authority for the proposition that the service in this case was irregular, and counsel for appellant cited none. (*Schaeffer* v. *Phoenix Brewing Company*, 4 Mo. App. 115; *Thompson* v. *Pfeiffer*, 60 Kan. 409; 56 Pac. 763.)

There is not the slightest evidence of any bad faith in the transaction at bar, but even if the mortgage did constitute a fraudulent preference, it would be perfectly good between the corporation and Lewis and would transfer a good and sufficient title as between the parties to it, and it could only be attacked by a creditor who was injured by the alleged preference. (54 Am. St. Rep. 251; 20 Cyc. 419; 14 Am. & Eng. Ency. Law, 314, 332; *First National Bank* v. *Eastman*, 77 Pac. 1043; 144 Cal. 487; 103 Am. St. Rep. 95.)

It has been always and universally held that in a suit to set aside a judgment the plaintiff must not only plead but prove a good defense on the merits. Equity will not grant relief against a judgment unless there is a meritorious defense to the action in which the judgment was rendered. (*Lawson* v. *Bettison*, 7 Ark. 401; *Gibson's Administrator* v. *Armstrong*, 32 Ark. 438; *Rotan* v. *Springer*, 52 Ark. 80; 12 S. W. 156; *Combs* v. *Hamlin Wizard Oil Co.*, 58 Ill. App. 123; *Way* v. *Lamb*, 15 Iowa, 79; *Steward* v. *Brooks*, 62 Miss. 492; *Gode* v. *Loughran*, 18 Neb. 392; *Spooner* v. *Leland*, 5 R. I. 348; *Seay* v. *Hughes*, 37 Tenn. 155; *Freeman* v. *Miller*, 53 Tex. 372; *Wright* v. *Eaton*, 7 Wis. 595; *Rogan* v. *Eads*, 101 Ill. App. 509; *Meyer* v. *Wilson*, 76 N. E. 748; *Nichols* v. *Vick*, 69 N. W. 951; *McBride* v. *Wakefield*, 78 N. W. 713; *Dorwart* v. *Troyer*, 96 N. W. 116; *Bakers Union* v. *Landis*, 106 N. W. 973; *Handley* v. *Jackson*, 50 Pac. 915; *State* v. *Lockhart*, 52 Pac. 315; *Collier* v. *Parrish*, 41 South. 772; *Reed* v. *Bank of Ukiah*, 148 Cal. 96; *Emerson* v. *Gray*, 63 A. (Del. Ch.) 768; *Tompkins* v. *Lang*, 74 Ill.

App. 500; *Berg* v. *Commercial National Bank,* 84 Ill. App. 614; *Pierson* v. *Lind,* 101 Ill. App. 624.)

By the Court, Norcross, J.:

This is an action to set aside a default judgment and decree foreclosing a certain mortgage in an action brought by the said C. R. Lewis as plaintiff against the said Nevada Consolidated Mining and Milling Company as defendant. From the judgment in favor of the defendant, Lewis, and from an order denying a motion for a new trial, plaintiff has appealed.

On the 15th day of October, 1907, the said Nevada Consolidated Mining and Milling Company borrowed from the said Lewis the sum of $41,547.60, and as security therefor gave its promissory note payable one year after date with interest thereon at the rate of one per cent per month, and as further security made and executed a certain mortgage on certain mill-sites and property belonging to the said mining company. Action was brought to foreclose the said mortgage on the 24th day of October, 1908. In the foreclosure suit the law firm of Mack & Green appeared as attorneys for the plaintiff, Lewis. Summons was served upon Mrs. A. M. Warren, secretary and resident agent of the company. The defendant mining company having failed to appear or answer the complaint, default was entered, and subsequently proof was heard before the court and the judgment and decree of foreclosure ordered entered in the action.

At the time the mortgage was executed, Richard Kirman was president of the said mining company and also president of the Farmers' and Merchants' National Bank of Reno. C. E. Mack, one of the members of the said law firm of Mack & Green, was a director and vice-president of the said mining company and also a director of the said bank. The said C. E. Mack was also a director of the said bank and the said mining company at the time the action was brought to foreclose the mortgage, but had resigned the vice-presidency of the mining company some months previous. The said Mrs. A. M. Warren was at the time

of the execution of the said mortgage and at the time of service upon her of the summons in the foreclosure proceedings a director of said mining company and also a stockholder in said bank, and also at all said times a clerk and stenographer in the office of the said law firm of Mack & Green. It appears that the said Mack and the said Warren were the only directors of the company in the State of Nevada at the time the foreclosure suit was instituted. No notice was given to any of the other directors or stockholders in the mining company of the foreclosure proceedings. For some time prior to the foreclosure suit James T. Boyd and A. N. Salisbury, attorneys, had appeared in several cases as attorneys for the said Nevada Consolidated Mining and Milling Company and were representing the interests of certain eastern stockholders and creditors of the said mining company. The said Boyd & Salisbury were never regularly employed as attorneys for the mining company by the directors thereof prior to the foreclosure proceedings, but were employed in such capacity by W. L. Stevenson, the managing director of the company.

The said C. E. Mack and the said Mrs. A. M. Warren were both aware of the fact that the said Boyd & Salisbury had appeared in litigation as attorneys for the said mining company, and also that they had represented the interests of certain eastern stockholders and creditors of the said company. The reason stated why no notice of the foreclosure suit was given to the said Boyd & Salisbury or to any one else by the said C. E. Mack or Mrs. A. M. Warren was that the said Boyd & Salisbury were not regarded by them as attorneys for the said mining company, and further that they did not consider that the company had any defense to the action, and that W. L. Stevenson, the managing director of the company, had advised Lewis that the company could not longer keep the mill insured or maintain a watchman and that he (Lewis) would have to protect his own interests.

It appears that the said Boyd & Salisbury learned of the order of the court for a foreclosure decree prior to

the signing thereof by the district judge, and appeared before the judge and objected to the signing of the same. The said C. E. Mack upon being informed of such objection notified Messrs. Boyd & Salisbury that they were not attorneys for the said mining company and would not be recognized by the company as such attorneys. Thereupon said Boyd & Salisbury notified the eastern stockholders whom they represented, and were subsequently directed by them to take proceedings to protect the interests of such eastern stockholders and creditors. Subsequently and upon the 28th day of December, 1908, a stockholders' meeting of the said mining company was duly held, at which meeting James T. Boyd, R. H. Cowles, Paulding Farnham, A. N. Salisbury, and G. Landers were elected directors of the company. Subsequently and on the same day a meeting of the said directors was held, at which meeting the said R. H. Cowles was elected president and a motion was made and carried "that James T. Boyd and A. N. Salisbury be employed as attorneys to take all steps necessary to protect litigation commenced by C. R. Lewis." In pursuance of said motion and the employment of the said Boyd & Salisbury as attorneys, this action to set aside the said decree of foreclosure was instituted.

The basis of the action was fraud in the procuring of the judgment. The principal allegations in the complaint other than those relative to the manner of service upon which plaintiff relied in part for a judgment setting aside the decree of foreclosure were as follows: "That on or about the 1st of October, 1907, the plaintiff herein was in an insolvent condition, and had been insolvent for some time prior to said 1st day of October, and of which fact the directors of said plaintiff were fully aware, and of which fact the Farmers' and Merchants' National Bank was also aware. That on or about the 10th day of October, 1907, the said C. E. Mack, W. L. Stevenson, R. Kirman, and Mrs. A. M. Warren held a meeting of the directors of the plaintiff herein, and directed that the plaintiff corporation borrow from

C. R. Lewis the sum of $41,547.60, and to give its note
and mortgage therefor, with interest on said sum from
date until paid.   That thereafter, to wit, on the 15th day
of October, 1907, the said R. Kirman, as president, and
the said A. M. Warren, as secretary, made and executed
the said note as directed by the directors, for the sum
of $41,547.60 to the said C. R. Lewis, and at the same
time, and as security for said note, made and executed
a mortgage, upon the quartz mill of the plaintiff herein,
situated near the town of Wadsworth, State of Nevada,
and estimated to be of the value of $200,000.   That the
only meeting of the stockholders ever held by said cor-
poration, except the one hereinafter mentioned, was held
on the 25th day of May, 1906, at which meeting the said
R. Kirman was elected a director and president, C. E.
Mack a director and vice-president, A. M. Warren a
director and secretary and treasurer, and W. L. Steven-
son managing director.   That the stockholders and cred-
itors were not informed of the amount of indebtedness
owed by this plaintiff, nor were the creditors and stock-
holders ever informed of any intention of the said direct-
ors to make and execute a mortgage to the said C. R. Lewis,
until long after the same had been made and executed to
the said C. R. Lewis, and the same was made, executed
and delivered without the knowledge or consent of the
stockholders or creditors, except such as were directors
of the plaintiff corporation herein.   That at the time the
said note and mortgage was made and executed, the said
Nevada Consolidated Mining and Milling Company was
insolvent, and was unable to pay its debts to its various
and different creditors, and of this fact the Farmers'
and Merchants' National Bank of Reno, Nevada, and
its board of directors and C. E. Mack, R. Kirman, A. M.
Warren, and W. L. Stevenson had full knowledge.   That
plaintiff is informed and believes, and upon such infor-
mation and belief alleges the fact to be, that the said
mortgage was made and executed to said C. R. Lewis
for the benefit and for the purpose of securing the
Farmers' and Merchants' National Bank, and that the

said mortgage was given in truth and in fact, to the
Farmers' and Merchants' National Bank under the name
of C. R. Lewis, and for the purpose of preventing the
said Farmers' and Merchants' National Bank and C. E.
Mack and R. Kirman from any loss or liability. That
the said Farmers' and Merchants' National Bank and
the said C. E. Mack and R. Kirman entered into an
agreement whereby the said Farmers' and Merchants'
National Bank would receive security for all indebted-
ness that might be and was due to said bank from the
plaintiff herein by having the said C. E. Mack, R. Kir-
man, W. L. Stevenson, and Mrs. A. M. Warren make
and execute said mortgage to said C. R. Lewis for the
purpose of securing the same, and that all the property
of the Nevada Consolidated Mining and Milling Com-
pany of any value would be pledged and mortgaged for
the benefit of the Farmers' and Merchants' National
Bank, and that the other creditors holding claims against
the Nevada Consolidated Mining and Milling Company,
amounting to the sum of about $550,000, would be
unable to have any property sold or applied to the
payment of their indebtedness unless they first paid
the indebtedness due to the Farmers' and Merchants'
National Bank. That plaintiff is informed and believes,
and upon such information and belief alleges the fact
to be, that the said mortgage was made and executed
to said bank to secure a preexisting debt due to said
bank, and also to relieve the said R. Kirman and C. E.
Mack of any liability, personal to themselves in regard
to said indebtedness. That plaintiff is informed and
believes, and upon such information and belief alleges
the fact to be, that the said R. Kirman, C. E. Mack, and
Mrs. A. M. Warren, as directors and officers of the plain-
tiff herein, failed and neglected to give any other credit-
ors, or the eastern stockholders of the said corporation,
any information of the condition of affairs of said
corporation, or the amount of its indebtedness, and
neglected, failed and refused, at any time prior to the
execution of said note and mortgage, and for a long time

thereafter, to inform the stockholders of the execution
of the said note and mortgage, or of the condition of the
affairs of this plaintiff. That the board of directors of
this plaintiff failed, neglected, and refused to call a
meeting of the stockholders of this plaintiff, annual or
otherwise, for the purpose of informing said stockhold-
ers of the condition of the plaintiff's affairs, or to
elect a new board of directors at the expiration of the
term of office of the said Mack, Kirman, Stevenson, and
Warren, as directors of this plaintiff. That after the
execution of said note and mortgage, the said R. Kirman
resigned as president and director of the said Nevada
Consolidated Mining and Milling Company, and that
since said date the said R. Kirman has ceased to be an
officer of said corporation."

The following findings, among others, were made by
the trial court in this cause: "That on said 15th day of
October, 1907, defendant, C. R. Lewis, paid to plaintiff,
Nevada Consolidated Mining and Milling Company, in
consideration of the making, execution, and delivery of
said promissory note and mortgage, the sum of $41,547.60.
That said mortgage was made by plaintiff in good faith
and in consideration of a then present advance to it of
the said sum of $41,547.60 and without any intent,
purpose, or design on the part of said corporation to
hinder, delay, or defraud any creditor or creditors of
said corporation. That said loan was made and
secured by said corporation for the purpose of pay-
ing its then pressing obligations, and the whole
amount of said $41,547.60 was received and used by
said corporation in the payment of its just obliga-
tions. That said loan was made by said defendant,
C. R. Lewis, in good faith and in consideration of the
then present advance to said corporation of the full sum
of $41,547.60, the consideration therein expressed, and
the said promissory note and mortgage and each of them
was taken and received in good faith by the said defend-
ant, C. R. Lewis, and without any intent, purpose or
design on the part of said defendant, C. R. Lewis, to

defraud said corporation or to hinder, delay, or defraud any creditor or creditors of said corporation. * * * That at the time of the service of said summons on said A. M. Warren as secretary of said corporation, the said A. M. Warren was the only officer or agent of said corporation within the State of Nevada upon whom service of the summons in said action could be lawfully made, and the said summons and complaint were duly and regularly served upon said secretary. That said C. R. Lewis, defendant herein, plaintiff therein, did not commit any fraud upon said corporation or its stockholders and creditors in the institution or commencement of said suit, or in securing service of the summons therein on said A. M. Warren. That said plaintiff, Nevada Consolidated Mining and Milling Company, did not have on the 7th day of November, 1908, and has not now, any good, sufficient, or meritorious defense to the said action, and the said judgment was regularly, legally, and fairly obtained against said corporation by defendant herein."

There appears to be sufficient evidence in the record to support these findings. The testimony is uncontradicted that the said C. R. Lewis loaned the Nevada Consolidated Mining and Milling Company from his own personal funds the sum which was secured by the mortgage in question. It is not disputed that the mining company actually received this amount of money and disbursed the same in liquidating certain pressing indebtedness existing at the time the mortgage was executed. It appears from the evidence that at the time this loan was secured about $7,000 was due on account of labor, and that unless the amount was immediately paid liens therefor would be filed. Notes were also due to the said Farmers' and Merchants' National Bank, aggregating about $25,000, and that the bank was pressing the company for payment. Other claims aggregating several thousand dollars were also due and payable, for a portion of which the said bank had accepted drafts, and was holding the mining company for payment.

Immediately upon the execution of the mortgage the

same was recorded in the office of the recorder of Washoe County, and its existence was known by all of the directors of the company. Interest on the mortgage was paid monthly excepting for the last two or three months prior to the foreclosure. The evidence also shows that the existence of the mortgage was known to the eastern stockholders and also to the said Boyd & Salisbury for some months at least before the foreclosure. The evidence also shows that prior to the institution of the suit to foreclose the mortgage an effort was being made principally by the eastern stockholders and creditors to effect some readjustment of the fiscal affairs of the company which at that time disclosed liabilities aggregating more than a million dollars. The representatives of the eastern stockholders and creditors were demanding that the preference secured by the Lewis mortgage be surrendered, but this request was at all times refused.

We have been unable to find anything in the record showing that the mining company has any meritorious defense to the Lewis mortgage. Indeed, we do not understand counsel for appellant to contend that they have made any such showing. They lay stress upon the contention that the effect of the mortgage was to give a preference to certain creditors, particularly to the Farmers' and Merchants' National Bank in which all of the directors of the mining company, excepting the managing director, Stevenson, were largely interested; but no authorities have been cited holding that the giving of such a preference is in itself fraudulent or would constitute a defense to foreclosure.

The company, having received the benefit of all the money advanced by Lewis, is not now, we think, in position to question the transaction. According to the evidence, the managing director, Stevenson, was the one most anxious to negotiate this loan, as the bank had refused to advance any more money to the company, and was demanding settlement of its claims. Stevenson had no interest in the bank and was solely interested in the

welfare of the mining company.   It would seem that at
the time the mortgage was executed Stevenson was of
the opinion that, if a loan could be negotiated sufficient
to meet the then pressing demands, the company would
be able to successfully carry out the large enterprise it
had undertaken.   The court below found no fraud in the
circumstances surrounding the execution of the mort-
gage, and there is nothing in the evidence whatever to
show that Lewis had any knowledge of the fiscal affairs
of the mining company, or that he acted otherwise than
in good faith in making the loan to the company.   The
evidence shows that Lewis and Kirman, the president of
the bank, were associated together in the farming and
cattle business; but this fact alone is not sufficient to
indicate any ulterior motive upon the part of Lewis in
making the loan.   At the time the money was borrowed
by the mining company from Lewis, the said mining
company was indebted to the said Kirman, Mack, and
Warren in a sum exceeding $80,000, and to the said
W. L. Stevenson in a sum exceeding $100,000; but none
of the money borrowed went to discharge any of the
personal claims of the directors.

Counsel for appellant contend that the evidence shows
that on the date the mortgage was executed the mining
company was insolvent and that this fact was known
to the directors.   The witness Salisbury testified rela-
tive to a conversation which he had with the said Kir-
man in September, 1907, as follows: "The conversation
was quite a lengthy one, and I cannot give the whole of
it; but the gist of it was at that time that the company
was bankrupt.   Mr. Kirman informed me at that time
that during the absence of Mr. Stevenson and myself in
the east that Mr. Haskal, who was acting as the book-
keeper and auditor, had been drawing drafts on the
Farmers' and Merchants' National Bank on behalf of the
company, without funds there to meet them with, and that
in a number of instances the Farmers' and Merchants'
Bank had refused payment to the company, and that he
had on quite a number of occasions warned Mr. Haskal

not to draw any more drafts on behalf of the company, and even warned him if he did he would probably be met with a criminal prosecution.  He stated that at that time some of the drafts, I believe, and some of the vouchers, were for the purpose of meeting the pay-rolls, and that the pay-rolls were unpaid.  The pay-rolls were unpaid, because when I was east I saw advices which Mr. Stevenson received from the National City Bank with respect to them, and that they were wanting money in Reno for the purpose of meeting the pay-rolls.  That was in the months of July and August, 1907."

Relative to the negotiations of the Lewis mortgage and the condition of the affairs of the mining company at that time, we quote the following extracts from the testimony of the witness Kirman:

"Q. Who was it went about raising the money? A. First it was Stevenson.  I told him I thought I could raise it.

"Q. He came to you?  A. He came to me first.

"Q. Then where did he go to?  Whom did you go to? A. Well, I spoke to several people about it in our own crowd, that is in the company, namely, Judge Mack, Mrs. Warren, and possibly one or two other people, I don't recall the names, and we did not feel at that time, having put up so much money, that we could interfere with our other business by putting up more than we had already put up.  Then I looked on the outside to get money.  And I went to Mr. Lewis, and I assured him, if he would make that loan, to go down there with Stevenson this way, I told him, 'Charley, it is a good chance to make a loan at a good rate of interest,' and Charley, when he had seen the mill, knew it was all right.

"Q. Lewis had seen it?  A. Yes, sir; he had seen it by reason of making a trip there once.  I was going on business, and he went with me because he had nothing else to do at that time, and saw the mill.  I said: 'I know all about it.  It is good for $41,000, and besides the company itself, the company is good without a mort-

gage; but I want you to have it to make yourself secure and feel all right.' And he agreed to put the money up, and he did put it up. * * *

"Q. Do you know of any pressing indebtedness other than that that was included in the mortgage? A. Absolutely none. In fact, when I notified Mr. McCone of the Nevada Engineering Works that the mortgage had gone on that, and if he felt uneasy at all he had better take it up with Stevenson right away, and get the money, that was the words used there, and he said, 'It is all right'; he had his promise.

"Q. What representations, if any, did Stevenson make about it? A. Stated it would take up all of his indebtedness, there was nothing to it, and if this was taken up things would go along, and the general way he had of talking he thought a lot of it, that the mine was an immense thing; it was fabulous and the bullion would be rolling out in twelve months' time, and they would not need at that time more than that; they needed $41,000, but that was his way of expressing it."

The witness C. E. Mack testified relative to the matter of the execution of the mortgage as follows:

"A. On October the 14th, is my recollection, Mr. Stevenson came to my office. It was before the meeting, anyway, along toward the middle of October. It was, at any rate, before this mortgage was given, and before that money was borrowed from Lewis, and Mr. Stevenson came to my office, and I think I was alone, but Mr. Shoup might have been present, and he was in dire distress. He needed, he said, $40,000 at once, must have it; he could not wait until he could get it from New York. He claimed he had ample money or funds in New York to meet everything, but that he must have this at once; otherwise he would have much difficulty. The men were unpaid for their labor, that had not been paid, he said, and there were a number of other claims that were pressing, and the bank had called in its notes, and that they had to be met. He asked me if I could not raise the money. I told him I could not; that it was out

of the question; that I could not raise it, even with any
security that the company might offer. He then left my
office and went to hunt up Mr. Kirman, and I know the
three of us met somewhere, whether it was at my office,
or at the bank, or on the street, and Mr. Stevenson urged
Mr. Kirman to get this money, even if he had to hypothe-
cate the property to the bank to get it, that he might
have it at once. Kirman undertook to raise the money,
and this was in a few days afterwards, or maybe the fol-
lowing day, I would not dare to say it is so long ago, the
board was called into a session by and at the request of
Mr. Stevenson, and when we met he dictated the reso-
lution, covering the borrowing of this money, and exe-
cuted a note and mortgage to secure the amount bor-
rowed. Then the question was taken up as to the other
indebtedness. Mr. Stevenson claimed that he owned
one-half of the indebtedness outside of the floating debts,
and that we owned the other half. It was agreed by the
owners of the indebtedness that this money that was
borrowed should be secured, and have the preference
over our debts, over what was due us, and that we, on
both sides, would wait until the company could pay us.
He also stated to me that that money, he could with it in
a short time, in a few days he could meet every obliga-
tion of the company that it owed outside of the notes;
that he had money in New York where he could get it.
And he further said he had some valuable stock of his
own, which he had inherited, I think he said, from his
father's estate, or his family, had inherited it himself,
and it was very valuable, and that he proposed to sell
that, and take it and pay up every dollar the company
owed, and every one would stand free and in the clear.
My recollection is at that time that the mill was running
right along.

"Mr. Boyd: Q. In October—the mill was running in
October? A. I am not sure about that, Mr. Boyd. I
am in doubt about that. However, the company was
operating and working a large force of men. I can't
say that the mill was running then, as I am not sure

about it; but he assured us that he had ample funds to maintain and meet every debt that the company owed, that he would pay the debts off of all of them, and we agreed to execute to him notes of the company for whatever money he advanced in payment for the other liabilities, outside of the amounts at that time from the mortgage and note, as they would appear."

From the testimony of Mrs. A. M. Warren, we quote the following excerpt:

"Q. And as I understand you to say, it was the understanding of the board, from what Mr. Stevenson represented to them, that that would take up all outstanding obligations of the company aside from these notes held by yourself and you four?   A. Yes."

The proof is insufficient, we think, to show insolvency of the mining company at the time the mortgage was executed, conceding that the company may have been insolvent at the time of the foreclosure.   The testimony of the witness Kirman, Mack, and Warren is to the effect that they did not regard the company as insolvent at the time the mortgage was executed.   They further testified that they understood the bulk of the indebtedness of the company to be held by themselves and the said Stevenson, between whom there was a mutual understanding that their claims were not to be pressed until the company was on a paying basis.

The position of counsel for appellant as to the law governing this case is indicated by the following excerpt from their opening brief: "It is our understanding of the law that it is not the duty of the court in this action to pass upon the validity of the mortgage executed by the Nevada Consolidated Mining and Milling Company to C. R. Lewis on the 15th day of October, 1907, but that it is only the duty of the court to ascertain whether or not such fraud existed in the procurement of judgment of foreclosure as to warrant the court in granting the prayer of the complaint herein and in allowing the defendant in the foreclosure suit to make its defense against the mortgage.   It is alleged in the complaint

herein that the defendant in the foreclosure suit has a meritorious defense to that action which it was prevented from making by the surreptitious actions of Judge Mack and Mrs. A. M. Warren, in procuring the default of the corporation, and will undoubtedly be argued by counsel for the respondent that, unless the court finds that the mortgage referred to was in fact invalid, it is the duty of the court in this action to allow the decree of foreclosure to stand, even though there was fraud in its procurement. We submit that it was not the duty of the trial court to pass upon the question of the validity of the mortgage, but that upon satisfactory proof having been given to the court that the judgment was procured through fraud, and upon the defendant's claiming to have a meritorious defense and insisting upon its right to present such defense, that then, in this action, the court should vacate the judgment and allow the defendant in the foreclosure suit the right to present its defense."

A court of equity will not as a general rule set aside or enjoin the enforcement of a judgment regularly obtained by default in the absence of a showing of a good and meritorious defense to the original action.

An exception to this rule appears to be recognized where fraud is practiced in the very matter of obtaining the judgment. In such cases the fraud is regarded as having been practiced on the court as well as upon the injured party. (Black on Judgments, sec. 321; 23 Cyc. 1025.)

In this case the mode of service of summons prescribed by law was complied with. The court below found against plaintiff's contention that fraud was practiced in securing the judgment and found that the same was "regularly, legally, and fairly obtained." Where the requirements of the law were complied with in the matter of service of summons, as in this case, whether fraud actual or constructive should be regarded as established, would, we think, depend largely on whether or not a showing was made of the existence of a meritorious

defense, or, at least, facts indicating the probable existence of such a defense. If in this case it appeared that there was a meritorious defense to the foreclosure suit, or facts appeared from which it could be inferred that such a defense existed with some reasonable degree of probability, then we think the facts altogether would be sufficient to establish at least constructive fraud. Upon such a showing the decree ought to be set aside. So far as is disclosed by the record in this case, the Nevada Consolidated Mining and Milling Company had no meritorious defense to the action. Not showing the existence of such defense, fraud in procuring the judgment, we think, cannot be predicated upon the other facts and circumstances of the case.

Counsel for appellant in their brief refer to a question of legal ethics, but a failure to observe the ethics which the situation may have imposed is not sufficient to set aside a decree which answers the requirements of law.

Counsel for appellant have advanced the further contention, as a reason why the judgment should be set aside, that, because of the fact that C. E. Mack was a director of the mining company, a relationship of trust existed between himself and the company, and therefore he could not take a judgment against the company in favor of himself for attorney's fees for foreclosing the mortgage; that so much of the judgment as awarded counsel fees was therefore void, and for this reason the entire judgment should be set aside. We are unable to see the force of this contention. If there is merit in the contention of counsel that, because of the relationship of C. E. Mack to the company, he or the firm of which he was a member could not legally have judgment entered up against the company for an attorney's fee in the case, nevertheless we think that could not militate against enforcing the judgment or decree, at least in so far as the mortgagee Lewis is concerned.

Another ground urged for setting aside the judgment is that in the foreclosure suit the plaintiff failed to file

an affidavit setting forth "that all the taxes for state and county purposes, payable on the money or debts secured by the mortgage or lien have been paid," as required by section 144 of the general revenue act of the state (Rev. Laws, 3756). Said section provides "that on motion of any defendant, the court shall make an order staying all proceedings in such action until such an affidavit shall have been filed, or proof made of the payment of such taxes; and it shall be the duty of the court, before entering a decree or judgment in any such case, to require such affidavit or proof."

There is no provision of law making a judgment void for failure to comply with this provision of the statute. The purpose of the section is clearly to aid in the enforcement of other provisions of law requiring the payment of taxes.

Doubtless through inadvertence, many decrees of foreclosure have been entered in this state without a compliance with this provision of law, and to hold that this would be a good ground for setting aside a judgment otherwise lawfully entered, in an action for that purpose, would be a dangerous precedent. This objection goes neither to a question of fraud upon the court nor the defendant mortgagor and cannot be considered in this action.

The objection and order appealed from are affirmed.