[No. 1,031.]

## SAMUEL BROWN, APPELLANT, *v.* R. W. WARREN ET AL., RESPONDENTS.

JUDGMENT OF NONSUIT—STATEMENT ON APPEAL—SPECIFICATION OF ERROR. On appeal from a judgment of nonsuit the specification of error is in these words: "To this decision and judgment of the court the plaintiff by his attorney, then and there duly excepted, and assigns the decision and judgment of nonsuit as error:" *Held*, sufficient.

NONSUIT—WHEN IT SHOULD NOT BE GRANTED.—If there is any evidence

which would authorize a recovery of any portion of the land in contro-
versy a nonsuit should not be granted.

EJECTMENT—QUITCLAIM DEED—WHEN IT CONVEYS GRANTOR'S TITLE
ACQUIRED BY SUBSEQUENT PATENT—NONSUIT.—C., after making final
proof and payment in United States land office of the land in controversy,
and receiving a duplicate receipt therefor, conveyed the same, by quit-
claim deed, to B. and R., C. subsequent to this conveyance received from
the United States government a patent to the land: *Held,* that, by his
patent, C. acquired no right or interest in the land in question which he
did not possess at the date of his deed to B. and R.; and that, upon the
motion for nonsuit, plaintiff's rights should have been considered the
same as they would have been if C.'s deed had been a bargain and sale
deed, or if it had been executed subsequent to the date of the patent.

DESCRIPTION IN DEED—PAROL EVIDENCE OF IDENTITY.—A description in
a deed conveying "all the real estate, water rights, and property of
every description, real and personal, in the state of Nevada, belonging
to the first parties of the first, or either of them," is sufficient to convey
the title.　Parol evidence is admissible to enable an identification of the
property to be made.

MOTION FOR NONSUIT—GROUNDS OF MUST BE STATED—WAIVER.—It was
urged upon appeal that a nonsuit should have been granted, because
there was no proof of the due execution of the conveyance to plaintiff.
No such ground was stated in the motion for a nonsuit: *Held,* that by
failing to specify this ground at the time the motion was made, defend-
ants waived it, and that it could not be considered on appeal.

CERTIFICATE OF REGISTER OF LAND OFFICE—EVIDENCE OF CONVEYANCE OF
LAND.—A certificate of the register of the land office containing a copy of
all the entries, as to preëmption, settlement, payment of purchase money,
and issuance of patent, that appeared in the books of the land office, in
relation to the lands in question, is competent evidence of the facts in-
tended to be proven thereby.

ONE TENANT IN COMMON MAY MAINTAIN EJECTMENT AGAINST EVERY ONE
BUT A CO-TENANT.—A tenant in common who has an interest in the prop-
erty which entitles him to the enjoyment of the entire estate, can main-
tain ejectment against all persons but his co-tenants and parties claiming
under them.

APPEAL from the Second Judicial District, Washoe
County.

The facts sufficiently appear in the opinion.

*Lewis & Deal* and *Wm. Webster,* for Appellant:

I. The court erred in granting a nonsuit. It was shown
that Brown was at least a tenant in common with Boyle in
the demanded premises, and as such tenant he had the right
to recover. (*Sharon* v. *Davidson,* 4 Nev. 416.)

II. At the time Countryman's deed was executed, Countryman had applied for a patent, and had paid the purchase money. That, to all intents and purposes, gave Countryman the legal title, and his deed to Boyle and Ridge carried the same to them. For all the purposes of an action of ejectment Boyle and Ridge were by such deed invested with the legal title. (*North Hempstead* v. *Hempstead*, 2 Wend. 110; Tyler on Ej. 74, 75; *Bludworth* v. *Lake*, 33 Cal. 262; 3 Green (Iowa), 349; 2 Washburne on Real Prop. 531; *Jackson* v. *McCall*, 3 Cow. 80; *Jackson* v. *Bull*, 1 John. Cas. 81; *Wallbridge* v. *Ellsworth*, 44 Cal. 353; *Crane* v. *Salmon*, 41 Id. 63; *Stark* v. *Barrett*, 15 Id. 366.)

III. The deed operated as an assignment of the duplicate receipt and the right to the patent. (*Green* v. *Clark*, 31 Id. 591.)

*R. M. Clarke*, for Respondents:

I. The quitclaim did not carry to Boyle and Ridge the fee subsequently acquired by patent from the United States. (*Harden* v. *Cullins*, 8 Nev. 49; *Treadway* v. *Wilder*, 12 Id. 108.)

II. The descriptive words in the deed are not sufficient to pass the interest, if any, of Ridge, which he held in common with Boyle, particularly as that interest, if any, was equitable merely. (7 U. S. Dig. 249, par. 82, 83; *Banks* v. *Moreno*, 39 Cal. 233, 239, 240; *Higueras* v. *U. S.*, 5 Wall. 828; *Power* v. *Hathaway*, 6 Hill, 453.)

III. This action being for the possession and to determine the title to the land, and also to recover value for the use and occupation, Boyle was a necessary party, and Brown, if a tenant in common only, could not maintain the suit. (Sec. 14, Civil Practice Act.; *Austin* v. *Hall*, 13 Johns. 286; *Merrill* v. *Berkshire*, 11 Pick. 269, 274; *Lane* v. *Dobyns*, 11 Mo. 105, 106, 107.)

By the Court, LEONARD, C. J.:

This is an action to recover possession of the north half of the north-east quarter, and the north-east quarter of the north-west quarter of section 12, township 19 north, range

19 east, Mount Diablo base and meridian—the same being lots 1, 2, 3 and 4 of said section—together with mesne profits, and the appeal is from a judgment of nonsuit.

1. It is claimed by counsel for respondents that the judgment below should be affirmed, because the statement on appeal does not specifically state the errors or grounds upon which appellant intends to rely on the appeal, as required by section 332 of the civil practice act. The only specification of error is in these words: "To this decision and judgment of the court the plaintiff by his attorney, then and there duly excepted, and assigns the decision and judgment of nonsuit as error."

Counsel for appellant insist that the assignment stated is sufficiently specific. The law does not require a vain thing. It was incumbent upon the plaintiff, before resting, to make a *prima facie* case entitling him, in the absence of evidence against him, to all or some portion of the relief demanded. If he did not make such showing it was the duty of the court, upon a proper motion, to enter a judgment of nonsuit.

In case of an appeal, the statute requires the appellant to state, specifically, not only the particular errors or grounds upon which he intends to rely on the appeal, but, also, that the statement "shall contain so much of the evidence as may be necessary to explain the particular errors or grounds specified, and no more." In appealing from a judgment of nonsuit, the plaintiff and appellant must set out in his statement sufficient evidence, upon every material issue, to entitle him to judgment; and if that is shown by a settled statement, he is entitled to reversal; otherwise he must fail. The burden of showing facts establishing a *prima facie* case rests upon him, and he can show them in one way only; that is, by stating so much of the evidence produced by him as is necessary to justify a recovery.

This being so, the appellant can make no more particular specification than was done in this case, except by restating the evidence or the legal conclusions resulting therefrom. He can only say the court erred in granting a nonsuit be-

cause the plaintiff made certain proof, stating it as it was given, or the substance of it, which entitles him to a judgment. Such additional specifications would aid neither the court nor counsel upon the opposite side. On an appeal like this, the appellant's theory is, and must be, that he made out a *prima facie* case in the trial court, and if respondent can show from the evidence in the statement that he failed in his evidence upon any one material point, the judgment will not be disturbed, if such failure was made a ground of the motion, or, it may be, if the omission was such that it could not have been remedied. It matters not what reasons the court may give for granting a nonsuit, or that the judgment upon those grounds is erroneous; the appellant must show by his evidence that in all other respects he was entitled to recover.

We are of the opinion, that in an appeal from a judgment of nonsuit, the plaintiff should not be required to make more definite specifications of the errors relied on than was done in this case. See *Donahue* v. *Gallavan*, 43 Cal. 576, and *Moore* v. *Murdock*, 26 Id. 524, where the specifications were: "First, the court erred in denying defendants' motion for a nonsuit at the close of plaintiff's case; second, the conclusions of law drawn by the court are not warranted by the facts found." The court evidently considered the statement of the first ground of error relied on sufficiently specific. It said: "The only point we can consider is the alleged error of the court below, in overruling the appellant's motion for a nonsuit. The other grounds of the motion for new trial were not specified, either as regards the insufficiency of the evidence or the errors in law, as required by the statute, and therefore they should be disregarded by the court below, and can not be examined on appeal."

The language of the statute requiring a specification of the errors relied on is substantially the same in applications for new trials and on appeals from judgments, and a specification that is sufficient in one case is equally so in the other. If we are correct in this, the cases cited sustain our conclusion. The first case was an appeal from a judgment of nonsuit, and in the second, as before stated, one of the

errors relied on for a new trial, was the court's refusal to grant a nonsuit. There is much greater reason for requiring the appellant on appeal from an order *denying* a nonsuit, to specify the particular errors relied on, than in cases on appeal from judgments of nonsuit. Because, in cases of the former character, any one omission may justify the nonsuit, and that may be pointed out; while in the latter cases the appellant must show himself entitled to recover from the whole case, and the error relied on—the granting of the nonsuit—can be shown only by making it manifest, from all the evidence, that he was entitled to recover upon the facts proven by him.

2. The first point made by counsel for respondents upon the merits, as a reason why nonsuit should have been granted, is stated as follows: "The land in controversy lies south of the meander line, and between that line and the center of Truckee river; and if it be said that the meander line must be conclusively taken as the river's edge, or low water mark, it must also be said that the river's edge, or low water mark, and the meander line conform, and that whatever lies between the meander line and the center of the stream is in the river. The river bed in a meandered stream belongs to the government, and in occupying, defendants committed no trespass which plaintiff could redress." It is not necessary, upon the evidence, to decide whether the proprietors of land on a meandering stream own to the actual low water line, or only to the meander line, as indicated upon the map. The testimony of the two surveyors, Merry and Baker, shows that a portion of the land in question was outside of the meander line from the river, on lot 3. Such being the case, even admitting that counsel for respondents is correct in the statement of the law, a nonsuit should not have been granted upon this ground.

3. It is next said: "Conceding for argument that the proofs show that Countryman had completed his cash entry and paid for lots 1, 2, 3, and 4, before quitclaiming to Boyle and Ridge, the quitclaim did not carry to Boyle and Ridge the fee subsequently acquired by patent from the United States.

The question for our consideration is this: Conceding the facts to be that on the third day of March, 1864, Countryman filed in the United States land office, at Carson, his declaratory preëmption statement covering the property in dispute, and on the second day of March, 1865, made final proof of settlement, improvements, etc., to the satisfaction of the register and receiver; paid the purchase money; received the usual duplicate receipt; and on the fifth day of February 1869, a patent was issued to him by the government of the United States. Did the quitclaim deed executed by Countryman and wife September 22, 1865, subsequent to making final proof and payment, but before receiving the patent, carry to their grantees, Boyle and Ridge, the legal title subsequently acquired by the patent, or transfer to them rights in the property, which would have enabled them to maintain an action for the possession thereof?

It may be admitted that a quitclaim deed only passes such interests as the grantor possesses at the time, and that it has no operation whatever upon subsequently acquired interests. It certainly transfers all existing interests and titles. We held in *Treadway* v. *Wilder*, 12 Nev. 114, that the statute of limitations did not commence to run until the legal title passed from the government; that is to say, until the issuance of the patent. But we recognized the doctrine that, after proof and payment, a preëmptor is the owner of the land, in fact, and that, thereafter, the government merely holds the naked legal title in trust for him until the patent is issued. "To maintain ejectment a right of entry and possession is all that is required." (*Toland* v. *Mandell,* 38 Cal. 43; *Dilly* v. *Sherman,* 2 Nev. 69.)

In *Bludworth* v. *Lake* (No. 1), 33 Cal. 262, the court said: "The purchase was made, the consideration money paid by the purchaser and received by the state, and the warrant authorizing the location delivered. Henceforth, the purchaser became the owner of the entire beneficial interest in that quantity of land. As soon as a valid location of the warrant was made, the right attached to the specific tract of land selected, and the legal title at once vested in the state of California, but for the benefit of the holder of the

warrant located.   The purchase from the state had already
been made and the land paid for.   The state simply held
the legal title only, without any beneficial interest what-
ever, with authority in the state officers to execute a patent
to the beneficiary, the real party in interest.   The state
held the legal title in trust, only, for the purchaser, until
the patent should issue.   When Snelling, in this instance,
made a valid location of the warrant   *   *   *   he became
the owner of the entire beneficial estate, and the state held
the legal title in trust for him.   Snelling was entitled to a
conveyance of the legal title.   When he conveyed all his
right, title, and interest in the land he not only conveyed
his beneficial interest but his right to a conveyance of the
legal title.   The latter necessarily goes with the former.
It is a part of the interest held at the time of his convey-
ance.   The patent was finally issued to give effect to the
right before acquired, and Bludworth took the legal title
charged with the trust in favor of the grantees of Snelling.
By the patent plaintiff acquired no new interest of an ad-
verse character, subsequent to his conveyance to Hall, and
the fact that said conveyance was only of his right, title,
and interest, instead of a bargain and sale of land, can not
affect the question."

In *Byers* v. *Neal*, 43 Cal. 214, it appears that, in Novem-
ber, 1863, Neal was a settler upon certain public lands, and
had made proof and payment under the pre-emption laws.
The court said: "The patent issued to him on the twentieth
of May, 1869, by the authorities of the United States, does
not constitute a new title in him in that sense.   It is merely
a formal assurance of the estate which he had already ac-
quired, by the proof and payment in November, 1863."
(See, also, *Fowler* v. *Frisbie*, 37 Id. 495; and *Thompson* v.
*Spencer*, 50 Id. 533.)

In *Stark* v. *Barrett*, 15 Cal. 361, the deed, which was
executed by the grantor long anterior to the issuing of the
patent, purported to convey the grantor's right, title, and
interest in a tract of the land which was included in the
patent; and it was held that, "the patent, in recognizing its
validity of the grant, necessarily established the validity of

all properly executed intermediate transfers of the grantee's interest;" and in *McCauley* v. *Fulton*, 44 Id. 355, the court says, "the effect of that rule is to vest in such grantees the legal estate; and there is no rule in respect to the operation of such patents which is better understood than this."

In *Frink* v. *Darst*, 14 Ill. 306, it is said: "The case of *Jackson* v. *Fish*, 10 Johns. 456, was this: A soldier in the service of the United States, entitled to a donation of land for his services, transferred his claim to the same before receiving patent therefor, by a deed of quitclaim or release, and the court held that when the patent issued it was for the benefit of the releasee. The case was doubtless rightly decided, but it has no analogy to the one at bar. The soldier, at the time he executed the quitclaim deed, had a claim to the tract of land from the government, and most undoubtedly, when that claim was afterwards perfected by the issuing of a patent, it was for the benefit of him to whom the claim had been transferred. * * * Such a deed (quitclaim) will undoubtedly pass the land itself, if the grantor has an estate therein at the time of the conveyance, but it passes no estate which was not then possessed." See, also, 3 McLean, 109.

Under the facts admitted for the purposes of this discussion, our opinion is that, by his patent, Countryman acquired no right or interest in the land in question which he did not possess at the date of his deed to Boyle and Ridge; and that, upon the motion for nonsuit, plaintiff's rights should have been considered the same as they would have been if Countryman's deed had been a bargain and sale deed, or if it had been executed subsequent to the date of the patent.

4. It is next said that the title to the property in dispute never passed from Boyle and Ridge, or either of them, to plaintiff; that no conveyance is shown from Boyle, and that, in the deed from Ridge and the Washoe United Consolidated Gold and Silver Mining company, limited, the property is not described. The descriptive words in the last-named deed are as follows: "All the real estate, water rights, and property of every description, real and personal,

in the state of Nevada, belonging to the parties of the first part, or either of them, a particular description of a portion of which is as follows." * * * The property particularly described does not include that in question. In *Stanley* v. *Green*, 12 Cal. 166, the court used the following language: "It is undoubtedly essential to the validity of a conveyance that the thing conveyed must be described so as to be capable of identification, but it is not essential that the conveyance should itself contain such a description as to enable the identification to be made without the aid of extrinsic evidence."

Upon the question of identity parol evidence is always admissible. (*Abbott* v. *Abbott*, 51 Me. 581; *Waterman* v. *Johnson*, 13 Pick. 261.) In the last case, the court said: "The parol evidence identifies the subject on which the deed operates, and then the estate passes by force of the deed. Suppose A. B. grants in these words: 'All the estate now in my occupation in —— street.' The very first step is to prove where the house occupied by the grantor was situated. But, then, another question arises; the grantee contends that the grantor occupied a dwelling-house and a stable adjoining, and the grantor denies it. The question must be determined by parol evidence; but as it is so determined, the house alone, or the house and stable, will be adjudged to have passed by the deed."

In *Jackson* v. *DeLancey*, 11 Johns. 365, the descriptive words in the mortgage under consideration were: "All and every those shares, lots, and parcels of land, and all other, the lands * * * and estate or estates whatsoever of said William, Earl of Stirling, whereof he is seized in common or separately and alone, in those several tracts of land called the patent of Cheesecocks, in Orange county, Richbell's patent, in the county of West Chester," etc., naming several other patents and their locations. Then followed these words of general description: "And all other, the lands, tenements, and hereditaments belonging to the said William, Earl of Stirling, within the province of New York." The premises in question passed, if at all, under the general description; the court held that the general description in

the mortgage was liable to no objection; that a party conusant of his rights might sell or mortgage by general description. In *Frey* v. *Clifford*, 44 Cal. 343, the descriptive words were: "All my right, title, and interest in Sacramento city, Upper California, consisting of town lots and buildings thereon." The court held the description sufficient to convey the lots in controversy.

In *Starling* v. *Blair*, 4 Bibb. 289, it was held that, "a mortgage of 'all the lots the mortgagor then owned in the town of Frankfort, whether he had a legal or equitable title thereto,' was not void for generality or uncertainty, but was good for all the lots which could be identified as belonging to the mortgagor at the date of the deed." The court thus commented upon general descriptions: "There may, indeed, be more difficulty in ascertaining the lots intended to be conveyed, where the language used in description is thus general, than if the lots had been designated by their numbers, but it is in the degree, and not in the nature, of the difficulty, that the two cases differ. It results in neither case from ambiguity on the face of the deed, but from extrinsic circumstances, and in both cases resort must be had to evidence *aliunde* for the purpose of identifying the lots which are the subject of the conveyance." We conclude that this objection is not valid.

5. It is next urged that there was no proof of the due execution of the conveyance introduced in evidence from the Nevada Land and Mining company to plaintiff. The statement on appeal declares that said deed was duly executed and acknowledged. But passing that fact, we do not think respondents can raise the point now under consideration for the purpose of sustaining the judgment of nonsuit. When the deed was introduced, it is true, the defendants made the same objection. But in their motion for nonsuit it was not stated or relied on as a ground therefor. The record shows that, after plaintiff rested his case, defendants moved the court for a judgment of nonsuit, on five grounds, which were stated specifically; and failure to prove due execution of the conveyance under consideration was not mentioned or referred to in general terms or

specifically. We think it would be unfair to plaintiff, and a practice that ought not to be sanctioned, to permit the introduction of the deed from that company, as a link in plaintiff's chain of title, and then sustain the judgment of nonsuit upon the. ground now urged, which was not stated or relied on by the moving party. (*Jeffree* v. *Walsh*, 14 Nev. 146.)

If the deed was not competent to prove a conveyance from the company to plaintiff, it should not have been admitted, and if admitted, although improperly so, it should have been struck out. While it was in evidence, although objected to by defendants, plaintiff had a right to rely upon it as proof of conveyance to him. If defendants had again urged the incompetency of that deed upon the motion for nonsuit, and a failure to transmit the title to plaintiff, as a consequence, "due proof of its execution" might have been permitted by the court and made by plaintiff. The only grounds of nonsuit stated, which, it. can be claimed, pointed in the slightest degree to the objection now urged, are as follows: "There is no proof that the land in controversy, at any time, belonged to Boyle or Ridge, or to both of them; the proof shows the title to the land in question, out of plaintiff, and not in him. No possession in any one has been shown of this land; the legal title thereto is now in Peter Countryman."

The defendants' claim, on the motion for nonsuit, was not that the conveyance from the Nevada Land and Mining company did not convey to plaintiff whatever title it had, but it was, that said company, and Boyle and Ridge, had no title to convey, because the patent to Countryman was executed subsequently to the date of his deed to Boyle and Ridge, and it was upon those grounds that the motion was granted. If defendants intended to rely upon the ground now urged in their motion for nonsuit, they would have so stated distinctly at the time, and failing to do so, under the circumstances, they waived the point. (*Mateer* v. *Brown*, 1 Cal. 222; *Baker* v. *Joseph*, 16 Id. 180; *Kiler* v. *Kimbal*, 10 Id. 268.) Besides, as was said in *Sharon* v. *Minnock*, 6 Nev. 385, the deed, upon its face, purported to be the deed

of the Nevada Land and Mining company, limited; and although its due execution was not proved, and its admission was objected to by defendants, still, it having been received in evidence, and not having been taken from the consideration of the court upon motion for nonsuit, it could very properly be held to be what it purported to be.

Counsel for respondents says in his brief that, "all objections were reserved by the court, and were argued and considered on the motion for nonsuit." The record does not show it if such was the fact. That only shows that the several deeds produced in support of plaintiff's case were introduced in evidence. Again, there was some oral testimony, admitted without objection after the introduction of the deeds, that the title was in plaintiff. He testified without objection that, he " claimed to be the owner of the lots in dispute; that on the seventh of December, 1876, he received a conveyance of this land, having purchased it of the Nevada Land and Mining company, limited, and from the mortgagees."

6. It is claimed that there was no competent proof of conveyance of the land in dispute by the United States to Countryman; that the duplicate purchase receipt was the best evidence. The proof made and received was a certificate of the register of the land office at Carson, wherein it was certified that Countryman filed his preëmption declaratory statement March 3, 1864, covering the land in question, and alleged settlement thereof of date December 21, 1863; that on March 2, 1865, Countryman made final proof and paid the purchase money (one hundred and eighty-eight dollars and twenty-eight cents) and received the usual receiver's duplicate receipt, showing said cash entry; that pursuant to said cash entry, a patent was issued by the government of the United States to said Countryman for said land February 5, 1869, and was recorded at Washington, in vol. 1, p. 359, records of the general land office. All of which appeared from the records in his office.

It was admitted by counsel for the defendants, at the trial, that the certificate contained a copy of the entries

that appeared on the books of the land office, in relation to the lands in question. We think, under the admissions, the certificate was competent evidence of the facts intended to be proven thereby. (Rev. Stats., U. S., 2 ed., secs. 906–2264; Copp's Pub. Land Laws, p. 192, sec. 34, and p. 768; Lester's Land Laws, pp. 50, 107, 430; *Kyburg* v. *Perkins*, 6 Cal. 675; *Gregory* v. *McPherson*, 13 Id. 572; Greenl. on Ev., vol. 1 (13th ed.), sec. 483 *et seq.*)

7. And lastly, it is urged in support of the nonsuit, that if plaintiff has any title or interest in the lands in dispute, he holds the same as tenant in common with Boyle, and that he can not maintain this action without uniting his co-tenant as a party with him. This action, except as to rents and profits, was for the possession only. It can determine no rights but those of 'present possession. (*Mahoney* v. *Van Winkle*, 21 Cal. 583.)

We have no doubt, upon reason and authority, that one tenant in common, who is seised *per mi et per tout*, and has an interest in the whole which entitles him to the enjoyment of the entire estate as against every one except his co-tenants, may maintain ejectment, in this state, against all persons but his co-tenants and parties claiming under them. (*Hart* v. *Robertson*, 21 Cal. 348; *Stark* v. *Barrett*, 15 Id. 371; *Touchard* v. *Crow*, 20 Id. 162; *Williams* v. *Sutton*, 43 Id. 71; *Smith* v. *Starkweather*, 5 Day, 210.) As to the mesne profits, he can recover, probably, only the proportion corresponding to his interest. (*Clark* v. *Huber*, 20 Cal. 196.)

Our opinion is, that the court below erred in granting a nonsuit, and the judgment is reversed.

PETITION FOR REHEARING.

*R. M. Clarke*, for Petitioner:

I. Under the pleadings plaintiff did not have such an interest in the land as entitled him to prevail in an action of ejectment.

II. It can not be maintained that the payment of the purchase money by Countryman, and the issuance of the receipt therefor, vested the legal title in Countryman, or took it out of the United States. (*Fenn* v. *Holmes*, 21 How.

481; *Witherspoon* v. *Duncan*, 4 Wall. 218; *Gibson* v. *Chouteau*, 13 Id. 99.)

III. No recovery can be had upon an equitable title unless it be pleaded. (*Maguire* v. *Vice*, 20 Mo. 431; *Estrada* v. *Murphy*, 19 Cal. 248; *Blum* v *Robertson*, 24 Id. 141; *Brock* v. *Tucker*, 42 Id. 346.)

RESPONSE TO PETITION FOR REHEARING.

By the Court, LEONARD, C. J.:

After careful examination of the points urged for rehearing, the same is denied. (See 39 Cal. 586; 38 Id. 218; 45 Id. 17; 13 Wall. 295; 2 Minn. 171; 2 Saw. 455; 30 Cal. 648.)