NEVADA CORNELL SILVER MINES, Inc., Et Al.
*v.* HANKINS, Et Al.

No. 2806

July 5, 1929.                                    279 P. 27.

*Cooke & Stoddard,* for Appellants:

*V. H. Vargas* and *J. M. Lockhart,* for Respondents:

## OPINION

By the Court, COLEMAN, J.:

This suit was instituted to set aside a default judgment against the plaintiff company, and in favor of Rose Hankins.

We will refer to the complaint as amended as the complaint. It alleges that the plaintiff company has been duly organized since December 3, 1919; that on December 4, 1919, it acquired in good faith and for a valuable consideration, from A. B. Witcher, the Glory, Quartz, and Atlas lode mining claims, situated in White Pine County, Nevada; that within 15 days after December 4, 1919, about 30,000 shares of stock in said company were sold and delivered to said persons, and that 200,000 shares of the 999,998 shares of stock in the company, previously issued to Witcher in payment for said lode mining claims, were transferred to the treasury of plaintiff company; that on July 9, 1918, the said Witcher, who was then applying for patent to said Glory and Quartz lode mining claims, entered into an agreement in writing with one Mrs. Rose Hankins to the effect that in consideration of her refraining, and inducing Mrs. C. S. O'Neil and Frank X. Murphy, a minor, through his guardian, to refrain from filing an adverse to his said application for patent, and of their conveyance to him of a half interest in the Monitor, Snowbank, Huntington, and Quartzite claims, and other considerations, he would, upon procuring of patent to said Glory and Quartz mining claims, convey to said Mrs. Hankins an undivided one-half interest therein; that said agreement was duly recorded in the office of the county recorder of White Pine County on October 21, 1918; that on November 28, 1916, said Witcher, in consideration of the conveyance to him of an undivided one-half interest in and to the Glory mining claim above mentioned, for the purpose of

patenting the same, agreed to reconvey said interest to Charles Minnoletti upon the issuance of patent thereto. It is alleged that on the date last mentioned Witcher entered into a similar agreement with one Herman Hoppe as to a one-half interest in and to the Quartz claim; that the agreement with Minnoletti was not recorded until July 20, 1920, and the one with Hoppe was not recorded until October 5, 1920. It appears from the complaint that said Minnoletti and Hoppe assigned their interests in the respective agreements to Rose Hankins prior to the institution of the suit brought by her against this plaintiff. The complaint alleges subsequent agreements with Hoppe and Minnoletti under which Witcher acquired an equitable interest in the half interest owned by them respectively in the Glory and Quartz claims.

It is further alleged that the half interest so agreed to be conveyed to said Witcher by said Hankins, O'Neil, and Murphy, was of the same value as the undivided one-half interest in the Glory and Quartz claims which the said Witcher agreed to convey to said Hankins, and that the claims of liability asserted by said Hankins, O'Neil, and Murphy, for ore extracted by Witcher for which said Hankins undertook to procure a release as a part of the consideration for said agreement, amounted to $6,500.

It is further averred that on February 2, 1923, the said Hankins, as sole plaintiff, but also for the use and benefit of the defendants O'Neil and Murphy, commenced an action in the district court of White Pine County against this plaintiff to obtain a decree adjudging her the owner of the Glory and Quartz mining claims; that V. H. Vargas, the attorney for the plaintiff in said action, served the summons thereon on February 5, 1923, as shown by his affidavit on file in the action; and that no other service of summons was made in the action.

It is further alleged that no appearance was made in that action by the defendant, and that on February 23, 1923, the clerk of the court entered a default in favor

of said Hankins and against this plaintiff, and that the court on April 25, 1923, entered a judgment and decree in favor of the plaintiff and against the defendant, upon the default theretofore entered, adjudging and decreeing that this plaintiff company held the said Glory and Quartz mining claims in trust for the said Hankins, and that all of the right, title, and interest, together with the right of possession, in and to said claims, and the whole thereof, be vested in the said Rose Hankins, free and clear of all liens and encumbrances, and that said company be forever enjoined from asserting or claiming any right, title, or interest in said claims, and that the title of said Rose Hankins be quieted.

The complaint alleges that the court had no jurisdiction to render a decree in the case mentioned, for the reason no summons was properly served on the defendants therein, plaintiffs herein, and no appearance by the defendant in the case.

It is further alleged that the decree is void in that it adjudges any claims or liens of A. B. Witcher, in or to said lode, to be void, though said Witcher was not a party to the suit. It is further alleged that said judgment is void for the reason that the complaint in said action does not state facts sufficient to give the court jurisdiction to render the decree which it did. It is further alleged that the decree is void for the reason that certain agreements between Witcher and others were not complied with.

It is further averred that neither of the plaintiffs herein had knowledge of the decree complained of, until October, 1924; that defendants have conducted no mining operations on said property and there are no intervening rights of third persons, except as to an optionee who has invested $2,000 in the property, but that said option contract be consummated, subject to the rights of plaintiffs.

A demurrer was filed to the amended complaint, on two grounds, viz.: First, that there was a misjoinder of parties plaintiff; and, second, that it did not state a

cause of action. The court sustained the demurrer on both grounds. As to the first ground the plaintiffs declined to amend, and a judgment of dismissal was entered as to Witcher. As to the ruling on the other ground, plaintiff company filed an amendment, wherein it is alleged that the default judgment aforesaid was and is null and void, in that it was obtained by the fraudulent inducement and procurement of said Rose Hankins, acting in her own behalf and in behalf of other interested parties, in this: That about 10 days after the filing of the action against this plaintiff, it, acting through Joseph V. Murphy, its vice president, employed an attorney to defend the suit brought against it by the said Hankins, and that said company, to enable said attorney to properly defend said action, delivered the corporate minute books and other records, books, documents, and data of said company, which were material and necessary for use in the defense of said action; that thereupon, as this plaintiff is informed and believes, and on such information so charges, the said Hankins, for the purpose and with the intent to prevent said company from appearing in said action and interposing any defense therein, fraudulently and corruptly induced said attorney to refrain from entering any appearance in said action in behalf of said company; that because of said fraudulent and corrupt inducement, the exact amount, character, and nature this plaintiff is unable to state, the said attorney wholly failed and neglected to take the necessary steps to prevent a default and decree being entered in favor of said Hankins and against this plaintiff; that upon the taking of proof after the entry of said default the said Hankins caused to be used in evidence a portion of the documents, records, and data so obtained.

To the complaint as thus amended the defendants demurred on the following grounds:

1. That it does not state a cause of action.

2. That it is ambiguous in that it does not appear in what particular the defendants fraudulently and

corruptly induced the attorney named to refrain from entering an appearance in behalf of this plaintiff company.

3. That it is unintelligible and uncertain for the same reason.

The defendants also moved to strike the amendment last mentioned, on the following grounds:

1. That it attempts to state a new cause of action.

2. That it is contradictory and inconsistent with the allegations contained in the complaint which is purports to amend.

3. That the fraud therein alleged is upon information and belief.

The court filed a written decision in which it passed upon only two points, viz.: Whether the complaint, as amended, stated a cause of action; and, secondly, whether the amended complaint is contradictory of, and inconsistent with, the allegations contained in the complaint.

In its reasoning the court held that the complaint as amended does not state a cause of action and that the amended complaint is "inconsistent and contradictory." The court ordered: "The demurrer is hereby sustained." It made no order that the amendment be stricken. Thereafter the court entered judgment in favor of the defendants and against the plaintiffs, from which an appeal was taken.

Many points are urged by appellants, but in the view we take of the matter we need decide but two of them.

■ We will first determine if the court erred in holding that Witcher was not a proper party plaintiff. We think it did not. Section 4998, Rev. Laws, provides: "All persons having an interest in the subject of the action, and in obtaining the relief demanded, may be joined as plaintiffs, except when otherwise provided in this act."

Section 5001 provides that "those who are united in interest shall be joined as plaintiffs or defendants." In McBeth v. Van Sickle, 6 Nev. 134, it was correctly

held that parties having no interest in common could not be joined as plaintiffs. The subject matter of this action is the title to the mining claims in question. From the allegations of the complaint it appears that Witcher conveyed whatever title he had in them to plaintiff company. The complaint failing to allege any interest in Witcher in the title to the claims, the demurrer on the ground stated was properly sustained.

We now come to the contention that the judgment complained of is void, since the only service of summons made was that made by the attorney for the plaintiff.

We are clearly of the opinion that the contention is well founded. It was admittedly the rule at common law that an interested party could not serve a summons (8 Bacon's Abr. p. 690), and the common law exists in this state except when expressly changed by statute (Rev. Laws, sec. 5474); but it is claimed by respondent that section 5022, Rev. Laws, authorizes such service. It provides that the summons "shall be served by the sheriff of the county where the defendant is found, or by his deputy, or by any citizen * * * over twenty-one years of age."

To accept respondent's view, a plaintiff, over the age of 21 and a citizen, might make service of summons upon the man he is suing. We do not think it can be said that the legislature in enacting the statute in question intended any such thing. It has always been the policy of the law that an interested person should not be put in a position whereby he may gain an advantage over his antagonist in litigation, and nothing but a clear, unequivocal renunciation of that policy will justify the interpretation contended for by the respondent.

Judge Cooley, speaking for the court in Morton v. Crane, 39 Mich. 526, in which was involved the validity of service of summons by a constable who was plaintiff in the case, said: "The danger of abuse in case of a summons consists in this, that the officer may falsely make return of a service never made, and thereby

put himself in position to obtain judgment by default against a party who perhaps will hear of the proceedings for the first time when an execution appears against him. No danger of abuse from an officer serving his own process can be greater than this, and the practice which would subject the officer to this temptation should not be tolerated. The courts generally have adhered with great propriety and justice to the rule that in no case shall a man be officer and party in the same proceeding."

The supreme court of Illinois, in White v. Haffaker, 27 Ill. 349, used the following language: " * * * In all legal proceedings, and at every stage of a cause, courts scrupulously guard against entrusting the execution of its mandates, to persons having any interest in the cause. The law, for wise purposes, acts alone through disinterested agents. It will not tempt those having an interest in any way to abuse its process, for the purpose of promoting selfish ends."

The same court repeatedly laid down the same rule, and in People v. Feicke, 252 Ill. 414, 96 N. E. 1052, said: " * * * The law is well established that a party to a suit cannot serve his own writ. (Filkins v. O'Sullivan, 79 Ill. 524.) The reason for this rule is, that the party serving process should be a wholly disinterested person. (Tallon v. Schempf, 67 Ill. 472.) If such a practice were sanctioned there would be great danger of abuse and inducement to the person making the service to make a false return, and thereby put himself in a position to obtain judgment by default or some other undue advantage over the opposite party, who would perhaps not know anything of the proceeding until after judgment had been rendered against him. The courts have therefore generally adhered, with great propriety and justice, to the rule that in no case can a person be both officer and party in the same proceeding. (Woods v. Gilson, 17 Ill. 218; Gage v. [Graffam], 11 Mass. 181; Morton v. Crane, 39 Mich. 526.) In the case at bar we have a petitioner serving the only process

provided by the statute to be served, upon himself. This service was in compliance with the letter of the statute but in violation of its spirit. * * * "

In State ex rel. Finch v. Duncan, 195 Mo. App. 541, 193 S. W. 950, wherein it considered the authority of a husband, acting as deputy sheriff, to serve upon his wife certain papers in the matter of an inquisition into her sanity initiated by him, it was held that no jurisdiction was acquired in the matter. The court said: "Now, in civil actions it has never been the policy of the law, either statutory or that known as the unwritten or common law, that the person who brought the action and was interested therein should be allowed to also serve the process and make return thereof. * * * So that even in the case of an ordinary civil action, involving no more than a mere civil liability for a limited sum of money, and where the regular process server is an official under heavy bond for the faithful performance of his duties, still the statute will not permit him to act in a case where he is plaintiff or is interested in the outcome of the suit. And the same is true at common law. * * * If an official who is under bond, is not allowed to serve process as the foundation of a suit in which he is interested or is a party, how much less should a private person, who is a party to the proceeding and interested in the outcome thereof, be allowed to serve the foundational notice or process therein and make return by attaching an affidavit thereto? * * * . It is not a question of whether Mr. Finch in this case is or is not acting honestly and with the best of motives, nor of whether he did or did not deliver a copy of the notice to Mrs. Finch as the attempted return on the notice states. The question is whether or not the law can regard service of jurisdictional notice, by one who is the moving party to a cause and interested in the outcome, as any service or notice at all. To recognize the validity of such notice in this case will give validity to it in all other cases of like character. It would open the way and make it more

easily possible for designing persons to railroad another into guardianship and perhaps worse, and to deprive him of his liberty and property without an opportunity to be heard. Consequently, it is not an error of fact against which this particular feature of relatrix's application for a writ of prohibition is directed, but, if we are right in our view, it is an error of law in holding that to be notice which is not notice, when viewed in the general light of the law's fixed and settled policy. If the so-called notice on which the inquiry is based is in law no notice, then the error of considering it as notice is not only an error of law, but one going to the jurisdiction of the probate court to maintain the inquiry and not a mere irregularity or defect thereof."

Such is unquestionably the law. Some of the additional authorities so holding are: Chambers v. Thomas, 3 A. K. Marsh (Ky.) 537; Knott v. Jarboe, 1 Metc. (Ky.) 504; Gage v. Graffam, 11 Mass. 181; Bush v. Meacham, 53 Mich. 574, 19 N. W. 192; Boykin v. Edwards, 21 Ala. 261; State v. District Court, 73 Mont. 84, 235 P. 751; Singletary v. Carter, 1 Bailey (S. C.) 467, 21 Am. Dec. 480.

In the light of the reasoning of these authorities, which is but the crystallization of the experience and wisdom of the ages, and which we must presume was the polestar of our legislature when it adopted the provision above quoted providing who may serve a summons, must we assume that it intended to confer upon a plaintiff in an action the authority to serve a summons, though it did not expressly negative that idea? We think not. No sounder, no saner, no wiser rule for the interpretation of statutes was ever announced than that stated by Lord Campbell in Reg. v. Skeen, 5 Jur. N. S. (Engl.) 151, 21 L. J. M. C. 91, as follows: "Where by the use of clear and unequivocal language, capable only of one construction, anything is enacted by the legislature we must enforce it, although, in our own opinion, it may be absurd or mischievous. But, if the language employed admit of two constructions,

and according to one of them the enactment would be absurd and mischievous, and according to the other it would be reasonable and wholesome, we surely ought to put the latter construction upon it as that which the legislature intended."

"All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence. It will always, therefore, be presumed that the legislature intended exceptions to its language which would avoid results of this character." Goldfield Con. M. Co. v. State, 35 Nev. 178, 127 P. 77; Escalle v. Mark, 43 Nev. 172, 183 P. 387, 5 A. L. R. 1512; 25 R. C. L. 1019.

If the views quoted from the various authorities mentioned are justified by experience, as we think they are, it would certainly be unwise, unreasonable, and unwholesome for our legislature to authorize the service of a summons by an interested party. Then, if we are to be guided by the rule of construction we have heretofore approved to the effect that general terms should be so limited in their application as not to lead to injustice, oppression, or absurd results, we must certainly say that the legislature never intended by enacting that a summons shall be served by "any citizen"—a general term—to confer that authority upon a party to an action. There is nothing in the opinion in Nevada Con. M. Co. v. Lewis, 34 Nev. 500, 126 P. 105, in conflict with this view. The statement of facts does not show by whom service of summons was made. It is evident that the court merely assumed that service of summons in that case was as prescribed by law. It did not consider the question.

If the conclusion which we have reached to the effect that it was not the legislative intent to confer upon a plaintiff authority to serve a summons on the defendant is sound, then by what process of reasoning can it be said that the statute should be construed to authorize plaintiff's attorney to make such service,

since at common law he too was precluded from doing so? The very same reasoning which precludes the one precludes the other.

. So far as we are aware, there is only one case taking a different view (Whitewater First Natl. Bank v. Estenson, 68 Minn. 28, 70 N. W. 775), and the court in that case did not consider the question from the standpoint above suggested. In that case the court overlooked the fact that only an indifferent person could make service at common law, and the further fact that in many cases the attorney for the plaintiff has a contingent interest in a case. We know that an attorney in a case is but little, if any, less free from bias, interest, and acrimony of feeling than is the client. Not so with one who has no further interest than merely to make service of summons. Then, too, the court seemed to have been influenced by the fact that it is a common practice in Minnesota for an attorney in a case to serve a summons. Such is not the fact in this state. The same reasons of public policy which required that an indifferent person serve a summons at common law exists with us.

The supreme court of Colorado, in Nelson v. Chittenden, et al., 53 Colo. 30, 123 P. 656, Ann. Cas. 1914A, 1198, considered the Minnesota case and refused to follow it, and held that service of summons by plaintiff's attorney was void.

In Rutherford v. Moody, 59 Ark. 328, 27 S. W. 230, it was held that the plaintiff's attorney could not serve the summons in a case.

We are of the opinion that the court never acquired jurisdiction to render the judgment complained of, and it is therefore void.

■ It is contended by respondent that the complaint as amended. does not allege a meritorious defense to the cause of action set up in the action wherein the default decree was entered, and hence no relief can be granted, citing Nevada Con. M. Co. v. Lewis, 34 Nev. 500, 126 P. 105, in support of the contention. The court in that

case held that a judgment *regularly* obtained by default would not be set aside in the absence of a showing of a meritorious defense. We have shown that the decree herein attacked was not regularly obtained. But whatever the law may be on this point, we think the complaint as amended shows a meritorious defense in part at least, in that it avers that Rose Hankins did not comply with the terms of her contract. It also avers payment of money to. Hoppe, pursuant to contract, which, if true, gave Witcher an equitable interest in one of the claims which passed to the company under the deed from Witcher.

Having reached the conclusion expressed, we do not deem it necessary to decide the other points raised, but call to the attention of counsel, as to the point suggested that the company is charged with a knowledge of all the facts known to Witcher, the case of Keyworth v. Nevada Packard Mines Co., 43 Nev. 428, 186. P. 1110.

It is ordered that judgment and decree appealed from be and the same are hereby reversed, and the case is remanded for further proceedings not inconsistent herewith.

SANDERS, J.: I concur.

DUCKER, C. J., dissenting:

I dissent from the order of reversal.

It is a generally recognized canon of construction that, "if a statute is plain, certain and unambiguous, so that no doubt arises from its own terms as to its scope and meaning, a bare reading suffices; then interpretation is needless." The statute is of this character. It reads in part: "Summons shall be served by the sheriff of the county where the defendant is found, or by his deputy, or by any citizen of the United States over twenty-one years of age. * * *" Section 5022.

There is nothing obscure in its phrasing. This broad authorization certainly includes an attorney for plaintiff, and in no other part of the statute, or elsewhere

in our law, is such attorney prohibited from serving a summons, either expressly or by implication. There is then no room for interpretation.

The prevailing opinion refers to two cases holding that an attorney for a plaintiff cannot serve a summons, but these cases are of no value as authorities under a statute like ours.

In Rutherford v. Moody, 59 Ark. 328, 27 S. W. 230, the question was determined with reference to common-law principles which required such service to be made by a person not interested in the litigation. Moreover, the statute in Arkansas, which at that time seems to have been applicable, was dissimilar to ours, in that it in express terms prohibited a party from serving a summons.

In Nelson v. Chittenden, 53 Colo. 30, 123 P. 656, Ann. Cas. 1914A, 1198, also cited, it was held that service of summons by the plaintiff attorney was void. But in Colorado the several sections of the code construed are largely different from our statute. The court in the Colorado case was of the opinion that the legitimate inference derivable from these sections was that the legislature never intended that an attorney for a plaintiff should serve a summons. The opinion was largely predicated upon the language of a section which authorized the attorney to issue a summons, and also provided that when the summons is served by any other person than the sheriff or his deputy, it shall be returned to the clerk or attorney who issued the same, with the affidavit of such person of its service. The provision permitting a return to be made to the attorney was deemed strongly to indicate an intent to prohibit the attorney from serving the summons, for the court reasoned it could hardly have been intended that one could serve a summons and make the return to himself.

The supreme court of Minnesota, in First National Bank of Whitewater v. Estenson, 68 Minn. 28, 70 N. W. 775, held that the statute involved in that case did not prohibit an attorney for a plaintiff from serving a

summons. The statute construed was practically the same as ours, except that a party to an action was prohibited from serving a summons. The court pointed out that the same reasons of public policy which moved the legislature to deny such authority to a party to an action do not apply to the same extent to an attorney, who is an officer of the court, and answerable to it for fraud or misconduct in the premises. But, be that as it may, I think whatever may be urged as to the impolicy of an attorney for a plaintiff serving a summons is a matter for legislative consideration.

ON PETITION FOR REHEARING

October 21, 1929.

*Per Curiam:*

Rehearing denied.

DUCKER, J.: I dissent.