**TAHOE REGIONAL PLANNING AGENCY, Plaintiff,**

v.

**Brian McKAY, Attorney General of the State of Nevada, Defendant.**

**No. Civ. R–82–248 BRT.**

United States District Court, D. Nevada.

Aug. 3, 1984.

---

Shaw, Heaton, Doescher & Owen, Ltd., Louis R. Doescher, Carson City, Nev., for plaintiff.

D. Brian McKay, Atty. Gen. by Scott Doyle, Deputy Atty. Gen., Carson City, Nev., for defendant.

## AMENDED OPINION

BRUCE R. THOMPSON, District Judge.

The Tahoe Regional Planning Compact, a congressionally ratified interstate compact designed to control and manage the development and use of properties within the Lake Tahoe basin, establishes the Tahoe Regional Planning Agency (TRPA) as the governing agency of the basin for the limited purposes for which the Compact was formulated. With respect to the open meeting requirement (the "Sunshine Law") applicable to TRPA meetings, the Compact provides: "All meetings shall be open to the public to the extent required by the law of the State of California or the State of Nevada, whichever imposes the greater requirements, applicable to local governments at the time such meeting is held." Art. III(d). There is no legislative history which illuminates the meaning of "imposes the greater requirements," but the consensus of interested parties is that the drafters of the Compact intended that the Sunshine Law of the state granting greater public access to meetings of local governments is the law which should control the TRPA.

California and Nevada have substantially similar open meeting laws (Cal.Gov't Code §§ 54950–54960 (West 1983) (Cal.Gov't Code hereinafter referred to as C.G.C.); N.R.S. §§ 241.010–241.040). The statutory exceptions are much alike. Initially, the attorneys for the TRPA adopted the position that the Nevada statute imposes the greater requirements because a judicial gloss to the California statute (*see Sacramento Newspaper Guild v. Sacramento County Board of Supervisors*, 263 Cal. App.2d 41, 69 Cal.Rptr. 480 (1968)) had created an exception to open meetings permitting the public agencies to confer privately with their attorney on occasions properly requiring confidentiality, while, by contrast, the Nevada Attorney General (*see* "Nevada Open Meeting Law Manual," 4th Ed.1983 (the Manual), p. 13, Question No. 12) had given a flat "No" answer to the question: "May legal counsel meet privately with a public body to discuss threatened or pending claims litigation?"

Inasmuch as the purpose of this declaratory judgment action is to find out whether the TRPA can confer privately with its attorney on confidential matters, it seems to us to be quite inappropriate and, in fact, question-begging to consider either the *Sacramento Newspaper* decision or the opinion of the Nevada Attorney General on the seminal question of whether the open meeting law of Nevada or of California imposes the greater requirements.

Taking each of the two "Sunshine Laws" by the four corners, and ignoring the conflicting views regarding attorney-client confidentiality, we have concluded that the Nevada statute imposes the greater requirements.

Both states essentially require local agency meetings to be "open and public" except as provided by statute. N.R.S. § 241.020(1); C.G.C. § 54954. Both also contain several exceptions which are substantially similar. *Compare* N.R.S. § 241.-030(1) *with* C.G.C. § 54957 (appointment, employment, evaluation of performance, or dismissal of public employees); N.R.S. § 241.030(3)(b) *with* C.G.C. § 54957 (meet-

ings to discuss the appointment of a public official must be open regardless of other provisions); N.R.S. 288.220 *with* C.G.C. § 54957.6 (labor negotiations may be conducted in private). The other exceptions listed in the respective statutes are peculiar to each state.

California law provides three exceptions for closed meetings which have no Nevada counterpart. The first exempts discussion of matters affecting national security. C.G.C. § 54957. That same section also excepts meetings with various law enforcement officials to discuss matters threatening the security of public buildings or the public's right of access to public services or facilities. Finally, Section 54956.7 excepts licensing discussions where the applicant has a criminal record.

Nevada law provides for two exceptions which are broader than the California equivalent. The first of these exempts meetings to consider the character, alleged misconduct, professional competence, or physical or mental health of any person, not just employees. N.R.S. § 241.030(1). The second excepts all labor-oriented discussions between local government employers and employees, or their respective representatives, whereas California only protects these discussions to the extent that they concern negotiations regarding compensation. *Compare* N.R.S. § 288.220(1), (4) *with* C.G.C. § 54957.6.

■ Based on these differences alone, it is difficult to ascertain definitively which "Sunshine Law" imposes the greater requirements. Nevada, however, has provided that minutes be kept of all meetings, whether open or closed. N.R.S. § 24.-035(1). The minutes of closed meetings become public records once the need for confidentiality has passed, unless matters under N.R.S. § 241.030(1) are considered, in which case the person affected must also consent to disclosure. N.R.S. § 241.035(2). In California, there is no requirement that any minutes be kept of a closed meeting, and even if they are, such documents are specifically precluded from disclosure to the public. *See* C.G.C. § 54957.2. Thus,

unlike California, closed meetings in Nevada become open through their minutes once confidentiality is no longer at issue. This significantly increases the government's accountability during these sessions and constitutes a major difference between the statutes of the two states. For this reason, Nevada's open meeting law should be considered to impose the greater requirement on local governments to visibly perform their public functions, and its law should control the Compact.

What is the status of an opinion of the Attorney General of Nevada as precedent? We have noted, *supra,* the answer given to the issue of attorney-client confidentiality in the Manual. In addition, on February 23, 1979, the Attorney General issued Opinion No. 79–5, which was a response to a specific inquiry by the City Attorney of Reno, Nevada respecting the interpretation of the open meeting law in application to meetings of an Insurance Committee which had been created by the City Council to consider settlement of claims against the City. The Attorney General opined:

> As mentioned in answer to your first question, NRS 241.020(1) expressly limits exceptions to the Open Meeting Law to situations where a statute specifically authorizes a closed meeting. We have found no Nevada statute which authorizes a City Attorney to meet with a City Council in private for the purpose of settling claims against the city.

> Some people have suggested that the attorney-client privilege (NRS 49.095) re-

garding communications by a client to his attorney constitutes a statutory exemption to the Open Meeting Law. However, in view of the specificity of NRS 241.020(1) we believe we are not free to read a part of our evidence code as going beyond its apparent scope, i.e., to prevent *testimony* on confidential communications. (Emphasis in original.)

■ In Nevada an opinion of the Attorney General is given whatever weight the Court thinks it deserves when the issue on which the opinion bears is before the Court for determination. *Weston v. County of Lincoln,* 98 Nev. 183, 643 P.2d 1227 (1982). Other jurisdictions have articulated varying rules.[1]

It is only in unusual circumstances that an Attorney General's opinion will control the outcome of a case. The Attorney General is by law the official advisor of various public bodies and public agencies. The case of *Cannon v. Taylor,* 88 Nev. 89, 493 P.2d 1313 (1972) is an example of a situation where conduct of public officials was protected because of reliance upon an official attorney general's opinion. The Nevada Supreme Court in that case, nonetheless, reiterated the general principle that "the Attorney General's opinions are not binding on us" and adhered to the Court's interpretation, contrary to that of the Attorney General, of the statute there under consideration. The Attorney General himself apparently recognized this as the correct evaluation of the weight accorded his opinions because in the Manual, *supra,* in

---

**1.** In Arizona, attorney general opinions are considered "advisory" and are "not a legal determination of what the law is at any certain time." *State of Arizona v. Seddens,* 112 Ariz. 425, 542 P.2d 1124, 1127 (1975). In California these opinions are accorded "substantial weight" and "great respect" by the courts. *Bruce v. Gregory,* 65 Cal.2d 666, 56 Cal.Rptr. 265, 271, 423 P.2d 193, 199 (1967); *Wenke v. Hitchcock,* 6 Cal.3d 746, 100 Cal.Rptr. 290, 294, 493 P.2d 1154, 1158 (1972). In Kansas they are "persuasive" but not "conclusive or binding" and "should not be approved or followed" where they are without "authoritative legal support." *Greenwood v. Estes,* 210 Kan. 655, 504 P.2d 206, 211 (1972). In Montana they are to be "upheld if not errone-

ous." *Jenkins v. Carisch Theatres,* 172 Mont. 453, 564 P.2d 1316, 1319 (1977). New Mexico gives them "only such weight as we deem they merit." *Perea v. Board of Torrance Co. Commissioners,* 77 N.M. 543, 425 P.2d 308, 309 (1967). Washington believes they are entitled to "considerable weight" unless the court is "constrained by reason, legislative history, or other rules of statutory construction to decline to follow an Attorney General's opinion." *Kasper v. City of Edmonds,* 69 Wash.2d 799, 420 P.2d 346, 350 (1966). And Wyoming has held that the opinions are entitled merely to "judicial consideration." *Demos v. Natrona Co.,* 571 P.2d 980, 981 (Wyo.1977). Of these, Nevada seems to have adopted the position of New Mexico.

answer to Question No. 12 respecting attorney-client confidentiality, he elaborated:

> However, recent court decisions in other States have recognized an attorney-client privilege between a public body and its legal counsel. Nevertheless, *until the Nevada courts rule on this question,* the Attorney General will continue to adhere to the view that if any such privilege were to exist in Nevada it must be specifically provided by statute as an exception to the Open Meeting Law. (Emphasis supplied.)

Finally, to the merits. Our concern is to determine the intent of the Nevada Legislature when it enacted the open meeting law (NRS 241.010, et seq.) and declared in 241.-020(1): *"Except as otherwise specifically provided by statute,* all meetings of public bodies shall be open and public...." (Emphasis added.) The Attorney General demands a specific statutory exception, which might be: "the open meeting law does not apply to conferences between a public body and its attorney." We deem this view to be quite myopic. It ignores centuries of common law policy and legislative history which are a backdrop for the interpretation of current legislation.

In refusing to give a functionally literal construction to a Nevada statute, we are not grazing on virgin pasture. Two precedents from the Nevada Supreme Court disavow such a principle. In *Nevada Cornell S.M. v. Hankins,* 51 Nev. 420, 279 P. 27 (1929), the court held that plaintiff's attorney could not serve initial process in an action despite the statutory language: "the summons shall be served by the sheriff of the county where the defendant is found, or by his deputy, or by any citizen .... over twenty-one years of age." The court said:

> In the light of the reasoning of these authorities, which is but the crystallization of the experience and wisdom of the ages, and which we must presume was the polestar of our legislature when it adopted the provision above quoted providing who may serve a summons, must we assume that it intended to confer

upon a plaintiff in an action the authority to serve a summons, though it did not expressly negative that idea? We think not. No sounder, no saner, no wiser rule for the interpretation of statutes was ever announced than that stated by Lord Campbell in *Reg. v. Skeen,* 5 Jur.N.S. (Engl.) 151, 21 L.J.M.C. 91, as follows: "Where by the use of clear and unequivocal language, capable only of one construction, anything is enacted by the legislature we must enforce it, although, in our own opinion, it may be absurd or mischievous. But, if the language employed admit of two constructions, and according to one of them the enactment would be absurd and mischievous, and according to the other it would be reasonable and wholesome, we surely ought to put the latter construction upon it as that which the legislature intended."

"All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence. It will always, therefore, be presumed that the legislature intended exceptions to its language which would avoid results of this character." *Goldfield Con. M. Co. v. State,* 35 Nev. 178, 127 P. 77; *Escalle v. Mark,* 43 Nev. 172, 183 P. 387, 5 A.L.R. 1512; 25 R.C.L. 1019.

If the views quoted from the various authorities mentioned are justified by experience, as we think they are, it would certainly be unwise, unreasonable, and unwholesome for our legislature to authorize the service of a summons by an interested party. Then, if we are to be guided by the rule of construction we have heretofore approved to the effect that general terms should be so limited in their application as not to lead to injustice, oppression, or absurd results, we must certainly say that the legislature never intended by enacting that a summons should be served by "any citizen" a general term—to confer that authority upon a party to an action....

Even more compelling is the decision in *State Engineer v. Cowles Bros. Inc.*, 86 Nev. 872, 478 P.2d 159 (1970). There a Nevada statute enacted in 1921 declared that Winnemucca Lake "is a navigable body of water and title to the bed thereof is held by the State of Nevada." In 1921 the lake was gradually drying up and when this action was brought it was non-existent. Plaintiff, the owner of adjacent lands, claimed title by virtue of the doctrine of reliction. The court held that despite the statute, the doctrine of reliction applied and sustained the judgment for the plaintiff.

Both the *Hankins* and *Cowles Bros.* opinions cited NRS § 1.030,[2] thus emphasizing this statute and the general policy of statutory construction that enactments of the Nevada legislature must be construed in the light of the common law and the history and development of the law.

Not only is the foregoing well established as a basis for statutory interpretation, but with respect to the very open meeting law here in question, the Nevada Supreme Court has held that the language "Except as otherwise specifically provided by statute ...." does not justify literal application. In *Goldberg v. District Court*, 93 Nev. 614, 572 P.2d 521 (1977), the court thwarted an effort to apply the open meeting law to a court rule-making meeting and declared that any such legislative enactment would violate the doctrine of separation of powers, despite the statutory language hereinabove alluded to.

■ The confidential nature of the relationship of attorney and client is one of the earliest of such relationships known to the common law. The relationship is one of great trust and confidence which, from the point of view of its fiduciary character, requires an attorney to act with utmost candor and fairness in his transactions with a client. This confirmed public policy of the common law also encompasses the confidentiality of the information disclosed to the attorney by the client and the advice

given. The confidentiality of the relationship "is founded on the *necessity, in the interest and administration of justice,* of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of *when free from the consequences or apprehension of disclosure." Hunt v. Blackburn*, 128 U.S. 464, 470, 9 S.Ct. 125, 127, 32 L.Ed. 488 (1888). (Emphasis added). While application of the principle most frequently arises in an evidentiary context, the rule of evidence precluding the unauthorized disclosure of such confidential communications is merely a corollary of the basic common law principle. Thus reliance on NRS 1.030, *supra* (footnote no. 2), is impelled by appropriate application of principles of statutory interpretation. The common law has engrafted an exception upon Nevada's open meeting law which permits certain meetings between a local government agency and its attorney to be closed.

We endorse the thorough discussion of the subject by Associate Justice Friedman in *Sacramento Newspaper Guild v. Sacramento County Board of Supervisors, supra,* and particularly the concepts:

Plaintiffs do not dispute the availability of the lawyer-client privilege to public officials and their attorneys. They view it as a barrier to testimonial compulsion, not a procedural rule for the conduct of public affairs. The view is too narrow. *The privilege against disclosure is essentially a means for achieving a policy objective of the law. The objective is to enhance the value which society places upon legal representation by assuring the client full disclosure to the attorney unfettered by fear that others will be informed.* (Citing authorities.) (Emphasis added.)

We also express confidence in the reasoning of the Supreme Court of Minnesota in the decision in *Minnesota Star and Tribune Company, et al. v. The Housing*

---

**2.** "1.030 Application of common law in courts. The common law of England, so far as it is not repugnant to or in conflict with the Constitution and laws of the United States, or the constitution and laws of this state, shall be the rule of decision in all the courts of this state."

*and Redevelopment Authority in and for the City of Minneapolis, et al.,* 310 Minn. 313, 251 N.W.2d 620 (1976) which, under a Sunshine Law like Nevada's requiring open meetings "except as otherwise expressly provided by statute," held that meetings with an attorney to discuss confidential matters are excepted. Almost everything relied upon by the Minnesota court in reaching its conclusions are compatible with Nevada's governmental and statutory framework.

The defendant relies heavily to support its interpretation of the law upon failed efforts subsequent to 1977 to amend NRS Chapter 241 to include an express exception of agency meeting with its attorneys. We agree with the terse comment of the court in *Sacramento Newspaper Guild, supra,* 69 Cal.Rptr. p. 492, that "As evidences of legislative intent they have little value." The courts have quite enough difficulty in seeking to determine legislative intent with respect to legislation that is passed without trying to solve what equivocal inferences should be drawn from the failure of final approval of legislation at some step of the legislative process.

Inasmuch as an interpretation of the Nevada open meeting law which would require a public agency to confer publicly with its attorney on occasions properly requiring confidentiality leads, in our view, to injustice and absurd consequences inimical to a public policy resting upon centuries of common law precedent, we decline so to interpret the statute. We, of course, recognize that a public governmental body which does not whole-heartedly embrace the open meeting philosophy may attempt to use an attorney-client exception as an opportunity to evade requirements of the open meeting law. Consequently, any such court engrafted exception must be carefully and restrictively drawn.

The foregoing shall constitute the Court's findings of fact and conclusions of law.

In consideration of the premises,

IT HEREBY IS ORDERED:

1. Defendant's motion for summary judgment is denied.

■ 2. Plaintiff's motion for summary judgment is granted with the effect that the Nevada open meeting law permits closed meetings between a public agency to confer with counsel on occasions properly requiring confidentiality, subject to the following conditions: (1) Any closure of a meeting by TRPA to allow it to confer privately with its attorney must be made from an open meeting which has been properly noticed in accord with Chapter 241 of the Nevada Revised Statutes, and the notice must declare the intention to close the meeting for the purpose of conferring privately with counsel on a specific agenda item; and (2) TRPA shall keep written minutes of each meeting which is closed for the purpose stated in (1) above. These minutes shall include all the information required by NRS § 241.035. The minutes of any meeting closed to confer with an attorney become public records when the litigation which it concerned is finally disposed of or the prospective litigation has been averted or the need for confidentiality no longer exists.